15004

MURRAY v. METROPOLITAN LIFE INS. CO.

(8 S. E. (2d), 314)

April, 1939.

*Messrs. Elliott, McLain, Wardlaw & Elliott,* for appellant,

*Mr. Norbert A. Theodore,* for respondent,

January 26, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On December 19, 1933, the appellant issued its policy insuring the life of James Murray in the sum of one thousand dollars, for the consideration of a quarterly premium of $4.94. The respondent, who is the mother of the insured, was, named as beneficiary. On March 19, 1937, the policy lapsed for nonpayment of premium, and remained lapsed until October 27, 1937, on which date the insured, upon the solicitation of the appellant's agent, applied for reinstatement thereof.

. The reinstatement application certified that the insured was then in sound health, had not had any illness or injury since the date the policy was originally issued, and in reply to the following question the answer was "No". "Have you since date of issue of the above policy  *  *  *  (b) Consulted any physician or physicians? If yes, give date, and name and address of physician or physicians, and state for what illness or ailment. No." Upon the application and the statements therein contained, and without medical examination, the appellant reinstated the policy on November 5th, subject to the conditions contained in the application for reinstatement: "I hereby certify that the foregoing statements and answers are correct and wholly true and have been made by me to induce the Metropolitan Life Insurance Company to reinstate the above policy, and I agree that if said Company shall grant such reinstatement the same shall be deemed to be based exclusively upon the representations contained

in this request and upon the express condition that if the foregoing statements be in any respect untrue said Company shall, for a period of two years from the date of such reinstatement, be under no liability by reason of the attempted reinstatement of the policy, except that the Company shall return to the insured or his personal representative all premiums paid since the date of said reinstatement."

The insured died on June 5, 1938, within the two-year period. Demand was made upon the company for the payment of the policy, and payment was refused, whereupon this action was instituted by the plaintiff for the amount due under the policy, with interest from the date of the death of the insured. The insurance company defended upon the ground that the statements contained in the application for reinstatement filed with it by the insured were untrue, in that the insured was not in sound health, and had consulted physicians, and had suffered from tuberculosis, from which he died. Prior to the commencement of the action—within the two-year period—upon learning of these facts the company declared the policy null and void, and on September 1, 1938, tendered to the plaintiff the sum of $23.56, the amount of premiums which had been paid on the policy since the date of reinstatement—which tender was refused. The trial resulted in a verdict for the plaintiff.

In the course of the trial the Court, over the objection of the plaintiff, allowed the introduction in evidence of the application for reinstatement, and also testimony on the part of the defense relating to the falsity of the representations therein made. The plaintiff made an unsuccessful motion for a directed verdict on the ground that this defense interposed by the appellant was unavailing, because the application for reinstatement was not attached to nor delivered with the policy. As an additional ground the plaintiff-respondent now seeks to sustain the judgment below on the ground that a verdict should have been granted in her favor.

Section 4 of the policy contract provides: "Entire Contract. This policy *and the application therefor* constitute the

entire contract between the parties, and all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy or be used in defense of a claim hereunder unless it be contained in the *application therefor* and a copy of such application is attached to this policy when issued." (Emphasis added.)

Section 7987-1, 1934 Code Supplement, provides: "Every firm, corporation, fraternal benefit, mutual protective, mutual insurance, mutual aid or other association doing a life and/or health, and/or accident insurance business in the state of South Carolina shall deliver with *each* policy of insurance *issued by it* a copy of the application made by the insured so that the whole contract shall appear in *said application and policy of insurance,* in default of which no defense shall be allowed to such policy on account of anything contained in, or omitted from, such application. If such a policy of insurance is issued upon an oral application, no defense shall be allowed to said policy on account of anything contained in, or omitted from, such oral application." (Emphasis added.) Acts 1934, page 1192.

The appellant insists that the above-cited statute and policy provision have no application to a renewal or reinstatement of a policy, but have reference only to the original contract of insurance. The trial Judge sustained this contention, and, in so doing, we think he was correct. It is admitted that no copy of the reinstatement application was attached to or delivered with the original policy.

In our opinion, the statute and the policy provision plainly contemplate only the written application made incident to the original issuing of the policy, and have no reference to any subsequent application for reinstatement. When the statute provides, as it does, that the insurance company shall deliver with *each* policy of insurance issued by it a copy of the application made by the insured so that the whole contract shall appear in *said* application and policy of insurance, it

clearly indicates the application for the issuance of the original policy. Otherwise the Act would have required the delivery of *all* applications, or *each* application, or *any* or *every* application affecting the validity of the policy, as is required by statutory provisions in Iowa and Ohio, and in other states. Annotation, 67 A. L. R., 1489.

■ The reinstatement of a policy is not a new contract of insurance dating from the time of the renewal, nor is it the issuance of a policy of insurance, but rather it is a contract by virtue of which the policy already issued, under the conditions prescribed therein, is revived or restored after its lapse. The reinstatement is simply the cancellation of a forfeiture, whereupon the contract is restored and recognized as binding by the company. *Petty v. Pacific Mutual Life Insurance Company of California*, 212 N. C., 157, 193 S. E., 228; *New York Life Insurance Company v. Buchberg et al.*, 249 Mich., 317, 228 N. W., 770, 67 A. L. R., 1483; *Mutual Life Insurance Company v. Lovejoy*, 203 Ala., 452, 83 So., 591; *Reidy v. John Hancock Mutual Life Insurance Company*, 245 Mass., 373, 139 N. E., 538.

While the cases are not in harmony as to whether an application for renewal is within the operation of statutes which in effect preclude the insurer from setting up misrepresentations by the insured unless the application is endorsed upon, attached to, or delivered with the policy, some of the apparent conflict may be accounted for by differences in the phraseology of the statutes.

Construing a statute very similar to ours, in *Metropolitan Life Insurance Company v. Burch*, 1912, 39 App. D. C., 397, the Court held that the statute embraced an application for the renewal of the policy as well as the application for the original, but the decision was based largely upon the view that an application which renews the original policy amounts to a new contract of insurance, with which conclusion we are not in accord.

■ We are satisfied that a proper construction of the South Carolina statute does not require a copy of the application for the reinstatement of a lapsed policy to be delivered to the insured as a condition precedent to its admissibility in evidence in a subsequent case or proceeding involving a cancellation of the policy on the ground of false representations contained therein. If in the judgment of the Legislature a copy of the application for reinstatement should be delivered to the insured under such circumstances it can easily so provide by proper enactment. But this Court should not read such a provision into the present statute, nor into the policy, both of which are silent on the subject.

■ Our construction, we think, is aided by the clause appearing in the statute: "If such a policy of insurance is issued upon an oral application, no defense shall be allowed to said policy on account of anything contained in, or omitted from, such oral application." It is plainly evident, in our view, that this quoted provision likewise refers to an application for the issuance of the original policy contract, and not to a renewal thereof.

The appellant complains that the lower Court erred in refusing its motion for the direction of a verdict upon the ground that the Court should have held that the only reasonable inference to be drawn from the evidence was that the answers to the questions in the application were material and untrue, and therefore, according to the specific agreement contained in the reinstatement application, the defendant was under no liability for a period of two years, and was within its rights in declaring the policy null and void.

With the application for reinstatement in evidence, and with the undisputed testimony submitted by the defendant showing the falsity of the representations therein made, it conclusively appears that the motion for a directed verdict should have been granted unless there was also evidence of waiver to take the case to the jury. And it was upon the issue of waiver alone that the case was submitted to the jury.

It is not necessary to review the evidence in detail tending to show that the representations contained in the application for reinstatement were untrue. In securing the reinstatement of his lapsed policy the insured certified on October 27, 1937, that he was in sound health; that he had not since the date of the issuance of the policy had any illness; and had not consulted any physician or physicians. An examination of the record shows, without contradiction, that subsequent to the date of the policy and prior to the reinstatement application, he had consulted and had been examined by two physicians who told him positively that he had "advanced tuberculosis." In addition to this, he entered a hospital for a brief time, and was treated for tuberculosis, knowing that he was in a tubercular sanitarium for this specific treatment. The appellant's soliciting agent testified that he had known the insured three or four years prior to his death, and had seen him once or twice a month during that time. That he noticed no change in his physical appearance during the time, and did not know that he had been sick, or had tuberculosis, or that he had consulted a physician.

To uphold the lower Court in submitting the case to the jury upon the issue of waiver, the respondent relies upon evidence which shows that the insured, on October 9, 1937, upon the solicitation of defendant's agent, applied for the issuance of another policy on his life. Following this application he was given a physical examination by the company's regular physician. He was accepted, and the policy applied for was issued to him on December 10, 1937. His first policy—the one which had lapsed and now sued upon—had already been reinstated on November 5, 1937, without a medical examination and upon the faith on the part of the company that the representations therein made were true.

In passing upon the motion for a directed verdict, the Court held that the statements in the reinstatement application were representations, and if untrue would render the policy voidable, if the falsity were shown to be material to the risk. The Court further stated, in passing upon the mo-

tion: "Therefore the evidence of waiver to be submitted to the jury is, that when Doctor Abell examined James Murray on December 10, 1037, Doctor Abell was the agent of the company, and any knowledge that Dr. Abell acquired then would be the knowledge of the company. Well, suppose then, that he did find out at that time that James Murray had tuberculosis; then the company had the right to void the policy which we now have before the Court. But the evidence shows that the company continued to accept premiums on this policy from James Murray until he died. That is undisputed, because that is the plaintiff's claim, and the defendant admits it; that after the examination by Doctor Abell, as agent for the defendant, of James Murray, the insured, the defendant continued to receive premiums from James Murray on this identical policy."

To sustain this ruling, the principle is invoked that an examination of the insured by a physician chosen by the insurance company is some evidence of one of two things: Either that the alleged disease did not exist, or that its existence was known to and waived by the insurer. *Nix v. Sovereign Camp, W. O. W.,* 180 S. C., 153, 185 S. E., 175; *Evans v. Sovereign Camp, W. O. W.,* 189 S. C., 247, 200 S. E., 850. The rule also is that knowledge of the examining physician is imputed to the company. *Sligh v. Sovereign Camp, W. O. W.,* 117 S. C., 437, 109 S. E., 279; *Southeastern Life Insurance Co. v. Palmer,* 129 S. C., 432, 124 S. E., 577; *Evans v. Sovereign Camp, W. O. W., supra.* There is no testimony disclosing the result of Dr. Abell's examination. Neither side introduced any evidence relative thereto, nor was he called as a witness.

Under the principles of law above adverted to it may not be questioned that in a controversy between the insured or his beneficiary on the one hand, and the company, on the other, in an action arising upon the policy issued as of December 10, 1937, involving the issue of waiver, it would be proper to submit that question to the jury. But there is no evidence in the record from which a reasonable inference

may be drawn that the company waived the falsity of the representations made by the deceased in his reinstatement application to the effect that he had not since the date of the issuance of the policy in suit consulted any physician or physicians. These representations, as shown by the evidence, were false, were material to the risk, were acted upon by the insurer, and were known by the insured to be false.

The representations related to facts within the knowledge of the applicant, and not within the knowledge of the company, and were material. In such case the applicant must answer truthfully. As was said in *Mutual Life Ins. Co. v. Leaksville Woolen Mills,* 172 N. C., 534, 90 S. E., 574, 577: " * * * The purpose of such questions is twofold: First, to elict information, which the company regards important; second, to give the sources from which the company may obtain further information. The parties themselves have made these questions and answers material. Their materiality depends, not only upon their own purport, but upon the fact that the contracting parties have agreed that the written application containing these questions and answers is the basis upon which the contract of insurance shall be made or refused.

In the case of *Clark v. Mutual Ins. Co.,* 251 Mass., 1, 146 N. E., 43, 44, discussing the question of misrepresentations in an application for reinstatement of a policy after lapse because of failure to pay premium, the Court pertinently says: "In an application for reinstatement such as the one before us the parties are bound by the terms of the contract. They agreed that all the answers were material to the risk, and were true. If the insured consulted a physician, or was treated by one, or had been-prescribed for by a physician since the date of the policy and before the date of the application * * * his answers were not true. * * * Having failed to comply with the conditions precedent mentioned in the application, the policy was not revived and the plaitiff could ot recover," citing *Reidy v. John Hancock Mutual Life Ins. Co., supra.*

We are unable to find any evidence in the record that the company had actual or imputed knowledge that the insured had consulted any physician or physicians as a result of Dr. Abell's examination. It is true that the company recognized the continued validity of the reinstated policy by collecting premiums thereon, but this is no evidence of waiver, unless it also knew that the insured had made misrepresentations of a material character in the reinstatement application. As soon as the company discovered the falsity of the representations after the death of the insured, and before the institution of this action, it promptly declared the policy null and void, and tendered the return of the premiums. That the representations were false is not denied. The case of *Evans v. Sovereign Camp, W. O. W., supra,* is not in point, because in that case it clearly appeared that the company's physician at the time he examined the insured for a policy which was later issued by the company, actually knew that the warranties made by the applicant as to his health and previous medical history, were untrue.

We think the motion for a directed verdict made by the defendant should have been granted, for the reasons assigned.

Judgment reversed, and case remanded for entry of judgment in favor of the defendant.

MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.

MR. CHIEF JUSTICE STABLER did not participate in the decision of this case.