13410

JOHNSON v. NEW YORK LIFE INSURANCE CO.

(164 S. E., 175)

*Messrs. Thomas & Lumpkin, Brown & Bush* and *L. H. Cooke,* for appellant,

496

*Mr. J. A. Kennedy,* for respondent,

May 16, 1932.

The opinion of the Court was delivered by Mr. Justice Stabler.

This action was brought by the plaintiff, as co-beneficiary, to recover under a policy of insurance alleged to have been issued by the defendant, New York Life Insurance Company, on the life of Leonard C. Johnson, her husband. Among other defenses, the company set up that the policy was void in its inception on account of fraudulent representations made by the insured to obtain the insurance. At the trial of the case defendant made a motion for a directed verdict on various grounds, one of which was, in effect, that the insured had consulted and been treated for alcoholism by at least two physicians within the five years preceding the date of the application; that, although the insurer was entitled to know this fact, the insured concealed it from the company and its medical examiner; and that such concealment rendered the policy void in its inception. The trial Judge overruled the motion, and the jury rendered a verdict for the plaintiff. Defendant appeals, assigning numerous errors, among them being the refusal to direct a verdict on the ground above set out.

We think the exception raising this point must be sustained. Part II of the application signed by the insured consists of a printed schedule of questions with the answers thereto written by the medical examiner in accordance with

information given by the applicant. It contains the following:

"Q. How frequently, if at all, and in what quantity do you drink beer, wine, spirits, or other intoxicants? A. None.

"Q. How frequently, if at all, and in what quantity have you drunk any of them in the past? A. An occasional drink.

"Q. Have you within the last five years any of them to excess? A. No."

There are also questions as to whether insured had ever consulted a physician for, or suffered from, any ailment or disease of the brain, nervous system, heart, blood vessel, lungs, skin, etc., to all of which questions the defendant's answer was "No." Then follows this question: "Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers?" (There are further inquiries as to the name of the ailment or disease, number of attacks, date, duration, severity, results, and, if within five years, name and address of every physician or practitioner consulted.)

The answer to this question was that insured had suffered one mild attack of influenza, of ten days' duration, in 1918, and that he had been given two treatments with cold vaccine in 1928 and 1929, with good results, by Dr. Ritter.

The next question is: "What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years?" (Along with the name and address of any such physician or practitioner, and the date of and reason for consultation, examination, or treatment, and the results.) The answer was "None."

Appellant does not contend that the answers to the medical examiner's questions constituted warranties, but concedes that they were merely representations, and that, in order to avoid the policy, it must be shown that they were fraudulent. In this respect the case differs from *Gambrill v. Insurance Co.*, 83 S. C., 236, 65 S. E., 231, in which it was held that a statement in the application that

the insured had no medical or surgical treatment in five years, if untrue, avoided the policy, since in that case the truth of the statement was warranted by the applicant. Where a statement of fact in an application is only a representation, its mere falsity is not sufficient to avoid the policy, its materiality and the good faith of the applicant in making it being important considerations. Under the issues made in the case at bar, it would be necessary for the defendant to show that the statements in the application relied on to defeat the policy were untrue, that their falsity was known to the applicant, that they were material to the risk and relied on by the insurer, and that they were made with intent to deceive and defraud the company.

Let us examine the record with reference to these questions. The undisputed testimony shows that, during the five years immediately preceding the signing of the application, the insured had been treated by physicians for alcoholism on ten different occasions, on one of which he was confined to a hospital; that some of such periods of illness would last from one to four weeks; and that he was advised by one of the attending physicians to discontinue the use of alcohol as the physician thought it would ruin his health. It is inconceivable that, under the circumstances, the insured did not know that his answer to the question as to whether he had consulted a physician, etc., was untrue. The case is different in this respect from *Rogers v. Insurance Co.*, 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172, in which the question was whether the insured knew that he had suffered from cancer. One may well suffer from cancer without knowing it, and the evidence in that case was clearly susceptible of the inference that the insured did not know that he had that dread disease. In the case at bar the insured was treated on ten different occasions by physicians for alcoholism, which is a diseased condition of the system resulting from excessive drinking of alcoholic liquor. The facts clearly were of such nature that Johnson could not fail to know them when answering the questions in the ap-

plication as to his consultation of physicians—certainly they were of such nature that he would be conclusively presumed to know them. See *Gambrill v. Insurance Co., supra.*

As to materiality, a representation is material when the insured knows, or has reason to believe, that it will be likely to influence the insurance company either in fixing the amount of premium or in rejecting the risk altogether. *Pelzer Manufacturing Co. v. Sun Fire Office,* 36 S. C., 213, 269, 15 S. E., 562; *Stoney v. Union Insurance,* Harp., 235. See, also, 32 C. J., 1288, where it is said: "A material matter is one which probably will affect the decision of the company as to the making of the contract or as to its terms." The testimony in this case shows beyond peradventure that the facts with reference to the applicant's consultation of physicians were material to the risk within these definitions and were relied upon by the insurer.

Finally, the intent with which representations or misstatements of facts are made is a thing that is locked up in the heart and consciousness of the applicant. It may be shown by his express words, or it may be deduced from his acts and the facts and circumstances surrounding the making of the misrepresentations, though on this question the mere signing of the application containing the answers alleged to be false is not conclusive. *Huestess v. Insurance Co.,* 88 S. C., 31, 70 S. E., 403. Under the circumstances of this case, we do not see how any reasonable inference as to the applicant's intent in making his answer to the questions under consideration could be drawn from the undisputed facts other than that he deliberately intended to deceive the company and thereby procure the insurance.

No question of waiver or estoppel is here involved, as there is no evidence tending to show that the soliciting agent or any other representative of the insurance company had any knowledge of the facts misrepresented by the applicant.

Attention is directed to the fact that the decision in this case rests solely upon the representations in the application as to the applicant's consultation with and

treatment by physicians, and not at all upon the representations as to his drinking intoxicants. Plaintiff's counsel objected to testimony as to insured's drinking, on the ground that the answer contains no allegations of misrepresentations in that respect, and that the company would be limited to the particular misrepresentations pleaded. For the purposes of this appeal that point is conceded, but, in order to establish the materiality or immateriality of the representations as to insured's consultation with and treatment by physicians, it was proper to admit testimony showing the nature and extent of the ailment or disease for which the consultation and treatment were had.

We recognize that, ordinarily, the question of fraud in a case of this kind is for the jury, but we feel that this is one of those rare cases in which the undisputed facts can reasonably give rise to only one inference, namely, that the policy was procured by fraud. The trial Court should have directed a verdict for the defendant on that ground.

Under this view of the case it becomes unnecessary to consider any of the other questions raised by the appeal.

Reversed and remanded, with instructions that judgment be entered up for the appellant under Rule 27 of this Court.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN and BONHAM concur.

MR. JUSTICE CARTER (dissenting).

The conclusion reached in the leading opinion in this case that the judgment should be reversed, and the case remanded, with instructions that judgment be entered up for the defendant under Rule 27 of this Court, is based, as I understand it, upon the holding that the insured made false representations in his application for insurance, as to his consultation with and treatment by physicians, and that he made such false representations with the deliberate intention of deceiving the insurance company and thereby procuring the insurance applied for. The provision in the insurance policy

bearing on the question involved and to which reference is made reads as follows: "The Contract—The policy and the application therefor, copy of which is attached hereto, constitutes the entire contract. All statements made by the insured shall, *in absence of fraud*, be *deemed representations and not warranties*, and no statement shall avoid the policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is endorsed upon or attached to this policy when issued." (Italics added.)

Under this provision it clearly appears, as stated in the leading opinion and conceded by appellant, that the representations the appellant alleges the insured made in his application for insurance did not constitute warranties, but merely representations, and, under the well-recognized rule, "in order to avoid the policy it must be shown that they (representations) were fraudulent." In the leading opinion it is recognized that, ordinarily, the question of fraud in cases of this nature is an issue for the jury; but it is contended by the writer of that opinion, concurred in by a majority of the members of this Court, that the undisputed facts in this case give rise to only one reasonable inference, namely, that the insurance policy in question was procured by fraud, and for that reason the trial Judge should have directed a verdict for the defendant. I am unable to agree with this view, but think that the trial Judge, his Honor, Judge Sease, properly submitted the issue to the jury, and letting the jury determine from all of the testimony whether the policy was procured by fraud. In order for the defendant to be entitled to a finding by the jury that the policy was procured by fraud, on the ground under consideration, it was incumbent upon the defendant to establish by the greater weight of evidence, not only that the representations made by the insured in his application for the policy were untrue, but that they were fraudulent; that the insured knew that the representations were untrue, and that they were made with

the deliberate intention and for the purpose of procuring from the insurance company the policy in question. Failing in this, it was the duty of the jury to find against the defendant on this issue. While it was the duty of the jury in passing upon this issue to consider all of the testimony in the case, that introduced by the plaintiff as well as that offered by the defendant, it must be kept in mind that the charge was made by the defendant against the insured, and the burden of establishing the charge was upon the defendant throughout the trial. It was not incumbent on the plaintiff to prove that the representations in question were true and made with an honest purpose, nor was it incumbent on the plaintiff to prove that the representations, if not true, were nevertheless made under the belief that they were true; but it was incumbent upon the defendant to establish its charge. The charge in question made by the defendant against the insured is summed up in the following language which I quote in substance from the leading opinion: The charge was, in effect "that the insured had consulted and been treated for alcoholism by at least two physicians within the five years preceding the date of the application; that although the insurer was entitled to know this fact, the insured concealed it from the company and its medical examiner; and that such concealment rendered the policy void in its inception."

The answers to questions the defendant alleges the insured made and relied upon to support the above-stated position are set out in the leading opinion. The defendant offered testimony to the effect that the insured had been in consultation with and had been treated by two physicians for alcoholism within the five years preceding the time the application was made. According to my view, this made an issue for the jury on the question involved. In this connection I shall call attention to the fact that the answers referred to as having been made by the insured to the questions propounded or presented by the company's medical examiner

were written by the examiner with no other person present. The lips of the insured are closed. He is dead, and, of course, there was no one to testify as to what took place at the time except the company's examiner. Of course, the Court will assume that the medical examiner acted with an honest purpose, but in my opinion the Court should also assume that the insured likewise intended to be honest and truthful in answering the questions propounded or presented to him by the company's medical examiner. There was no testimony offered that tended to show the insured was not a truthful man. In fact, the plaintiff offered testimony that the insured was a truthful man, and this, according to my view, was a fact to be considered by the jury in passing upon the issue presented. *Wingo v. New York Life Insurance Co.*, 112 S. C., 139, 99 S. E., 436; *Rogers v. Atlantic Life Insurance Co.*, 135 S. C., 101, 133 S. E., 215, 45 A. L. R., 1172. One of the physicians presented as a witness on behalf of the defendant. in the course of his testimony stated that he treated the insured on several occasions for alcoholism; that the first time was April 15, 1925, and the last time was September 9, 1927. This physician also stated that during that time he had treated the insured for a number of other troubles. The other physician presented by the defendant as a witness in the case testified to having treated the insured for alcoholism on two occasions, April 16, 1925, and again on November 7, 1928. The application in question was made January 8, 1930. According to the testimony of Mrs. Johnson, widow of the insured, he had not had a physician to treat him or taken any medicine since the month of March, 1928, and, further, that he had not taken a drink of whiskey since November or December of 1928. Under this testimony the jury might reasonably reach the conclusion that it had been so long since the insured had been sick and so long since he had taken a drink of whisky, prior to the time the application was made and the answers given to the questions presented to him, that he did not remember the dates he was

treated for alcoholism, if he was treated for that trouble, and, therefore, inadvertently made a mistake in giving the answers. The further fact that he was treated for a number of other troubles at the same time of the alleged treatment for alcoholism may have caused the insured to become confused in answering the questions. As stated above, I assume that the examining physician, who wrote down the answers of the insured to the questions referred to, acted with an honest purpose, but I also think that the Court should assume that the insured in answering the questions presented to him likewise acted with an honest purpose, especially in view of the fact that there was no testimony offered to prove that the insured was not a truthful man, but, on the other hand, the plaintiff offered testimony to the effect that he was an honest and truthful man. It is, therefore, my opinion that under all of the testimony and surrounding circumstances in the case it was an issue for the jury to determine whether or not the insured made false representations when he answered the question as to whether or not he had been treated for alcoholism within the five years preceding the time of answering the questions and also as to whether or not, if a misstatement was made by him in answering the said question, whether it was done with a fraudulent purpose and with the intention of deceiving the defendant and thereby procuring the policy in question. It is also my opinion that, under the facts and circumstances of the case, the materiality of the answers of the insured under consideration was a question for the jury.

For the reasons above stated I am unable to agree with the conclusion reached in the leading opinion, and, therefore, most respectfully dissent.