16264

FRANCIS v. MAULDIN *ET AL.*

(55 S. E. (2d) 337)

376

Messrs. *Hinson, Traxler* and *Hamer,* of Greenville, *for Appellant,*

Messrs. *Hingson & Todd,* of Greenville, *for Respondent,*

September 16, 1949.

FISHBURNE, Justice.

This action was brought for the recovery of damages, actual and punitive, for fraud and deceit, based upon allegations in substance as follows: That the defendants, E. E. Mauldin, Ruth B. Mauldin, and J. S. Mauldin, executed and delivered to the plaintiff on or about April 8, 1947,

for valuable consideration, their promissory note in writing whereby they agreed to pay him the sum of Nineteen Thousand Seven Hundred and No/100 Dollars on demand. Prior to August 15, 1947, the defendants advised the plaintiff that they desired to make a nine thousand dollar payment on the note, and requested that the original note be sent to Greenville, where they resided, so that credit for this payment when made could be endorsed thereon. The plaintiff, relying upon this representation and promise, sent the original note to Greenville by his agent for this purpose.

When the plaintiff's agent arrived in Greenville, the defendants advised him that they desired to pay the note in full, and to effectuate this the defendant, E. E. Mauldin, executed two postdated checks, one in the sum of $9,000.00, and the other in the sum of $10,700.00. In exchange for these checks, known by the defendants to be worthless, they obtained from plaintiff's agent possession of the original note, all of which was in furtherance of a pre-arranged fraudulent scheme entered into by the defendants in order to obtain possession of the note. Plaintiff prays judgment against all of the defendants in the sum of $39,400.00.

To the complaint, Ruth B. Mauldin and J. S. Mauldin entered a general denial. The defendant, E. E. Mauldin, answered and counterclaimed for twelve thousand dollars. He denied the execution of the note, and alleged that the indebtedness set forth in the complaint grew out of a gaming transaction in Greenville on or about the 15th day of October, 1946, in which he lost to the plaintiff in a gambling or dice game a sum of money in excess of $31,000.00. He gave plaintiff all the money he had, and one month later, on November 15, 1946, he delivered to the plaintiff his postdated check for $31,000.00. From month to month he made payments thereon until July, 1947, at which time the gambling debt, including interest, had been reduced to $19,700.00. This amount was evidenced by the two postdated checks recited in the complaint. The defendant, Mauldin, also alleged

that the plaintiff had at all times since October, 1946, following the gambling transaction, been a resident of the state of Tennessee. He prays judgment against the plaintiff on his counterclaim in the sum of twelve thousand ($12,000-.00) dollars.

The plaintiff moved to strike certain allegations from the answer, which was incorporated in the counterclaim; and, reserving his right to insist upon the motion to strike, demurred to the counterclaim on numerous grounds. The motion and demurrer were heard by the trial court and were overruled.

The allegations objected to are "all the cash he had and gave plaintiff," and "whom this defendant is now informed and believes is a large and experienced gambler." Plaintiff contends that these allegations are irrelevant, and were inserted for prejudicial purposes only.

Generally, the burden of proof that a contract or transaction is a gambling transaction is on the party asserting it. 38 C. J. S., Gaming, § 61, page 117. This burden upon the trial of the case will rest upon the defendant, E. E. Mauldin.

We concur with the view expressed by the trial judge that if the defendant can prove that the plaintiff is a large and experienced gambler, this would tend to show that his version of the transaction is correct. All that is required is that the fact shown legally tends to establish, or to make more or less probable, some matter in issue, and to bear directly or indirectly thereon. *Drayton v. Industrial Life & Health Ins. Co.*, 205 S. C. 98, 31 S. E. (2d) 148; *Entzminger v. Seigler*, 186 S. C. 194, 195 S. E. 244.

We are also in accord with the trial court's holding that the allegation that the defendant Mauldin paid to the plaintiff at the time of the gambling loss all the cash he had, is also relevant. It was either a gambling transaction or it was not, and evidence as to this payment of cash would tend to

show that money itself was wagered on the dice game, and would tend to prove the gambling transaction.

Plaintiff's main contention, we take it, is, does the counterclaim state a cause of action under Section 6308 of the Code? This ground of appeal brings up for construction the statute referred to, which reads as follows:

"Any person who shall, at any time or sitting, by playing at cards, dice table, or other game or games whatsoever, or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any one or more person or persons so playing or betting, in the whole, the sum or value of fifty dollars, and shall pay or deliver the same or any part thereof, shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid or delivered, or any part thereof, from the respective winner or winners thereof, with costs of suit, by action, to be prosecuted in any court of competent jurisdiction."

The following section, 6309, provides that in case the person who shall lose money by playing any of the games mentioned in the quoted section shall not, within the time prescribed, sue for the recovery of his loss, it shall be lawful for any person to sue for and recover such loss, and treble the value thereof, against the winner.

Plaintiff takes the position that it is not alleged in the precise words of the statute (Sec. 6308), nor in words equivalent thereto, that the sum sought to be recovered in the counterclaim was lost "at any time or sitting." Hence no cause of action under the statute is stated.

Defendant alleged in his counterclaim "That on or about the 15th day of October, 1946, this defendant did lose to the plaintiff a sum of money in excess of Thirty One Thousand and No/100 ($31,000.00) Dollars in *a gambling or dice game taking place in Greenville, South Carolina on said date.*" (Emphasis added.)

This remedial statute has given rise to few cases in this state, and none of recent origin. In *Trumbo v. Finley*, 18 S. C. 305; 51 Am. St. Rep. 414; Ann. Cas. 1916E, 94, decided in 1882, which is cited and laregely relied upon by the plaintiff, the court interpreted the words "at any time or sitting," to mean "at any one time or sitting." The action in that case was brought by a stranger or third person under the penal section of the Code (Sec. 6309) to recover from the winner in a faro game, the sum of $75,000.00, being treble the amount won.

The construction referred to above was based upon the following allegation of the complaint: "That on or about the 24th day of July, 1879, within the limits of the county and state aforesaid, one Bentham R. Caldwell did, by playing at faro," lose to the defendants the sum of $1,500.00. There were numerous causes of action, and the above allegation related to the first cause of action.

The court in discussing whether or not the phraseology, "by playing at faro," came within the purview of the statute (Sec. 6308), held that such allegation did not attempt to state the offense in the words of the statute, nor in equivalent words, hence no cause of action was stated. It was pointed out that the word "sitting" did not appear in the complaint, nor the words "any time;" and the court went on to say, "We do not regard time as important in reference to any particular day within three months, but necessary as to the manner in which the money was won, *viz*: 'at one time or sitting,' which, as we think, was an important element of the offense under the statute."

In the *Trumbo case*, which involved an action under the penal section of the Code, the court gave to the allegation, "playing at faro," a rigid construction, and held that this wording did not definitely carry the meaning that the money was won "at one time or sitting," but we do not think this holding is controlling in the case before us. In his counter-

claim Mauldin does not allege that the money was lost by "playing at dice," but lost "in a gambling or dice game." In our opinion, this allegation, while not stated in the apt words of the statute, certainly carries the meaning that the defendant's money was lost at one time or sitting. See *Zellers v. White*, 208 Ill. 518, 70 N. E. 669, 100 Am. St. Rep. 243, and *Johnson v. McGregor*, 157 Ill. 350, 41 N. E. 558.

It is quite evident that in *Trumbo v. Finley, supra,* the court recognized the distinction between a remedial action by the loser, and a penal action by a third person, by stating, "The action being by a stranger, who had no privity with the defendants, for a penalty on account of an alleged legal wrong which did not exist at common law, but only in the statute, we think it was necessary that the precise facts constituting that wrong should be alleged. * * *"

We held in the recent case of *McKenzie v. Peoples Baking Co.,* 205 S. C. 149, 31 S. E. (2d) 154, that a statute which is both remedial and penal may be given a liberal· construction in a civil court when applied remedially, and yet be strictly construed in a criminal court in a prosecution for a violation. Section 6308, upon which the counterclaim is based, is a remedial statute. Section 6309, authorizing treble damages by a third person, is a penal statute. In our opinion, the allegation in the counterclaim is equivalent to saying "at one time or sitting," and comes within the statute.

The next ground of the demurrer, likewise overruled by the trial court, is that the only thing that the defendant, Mauldin, parted with at the time of the alleged gambling transaction, was a postdated check which was void, and that any payments made subsequently on this check were voluntary payments, not within the scope of the statute, and not recoverable.

By this counterclaim, Mauldin seeks to recover the sum of $12,000.00 which he paid to the plaintiff as the result of a gambling transaction over a period of

eight months. There is nothing in the statute which requires immediate settlement of losses in a gambling game. The first postdated check which the loser gave to the winner one month after the dice game, in the sum of $31,000.00, was merely evidence of the monetary consideration wagered and lost in the course of the game. He is not suing for the recovery of any of the postdated checks, but for the sum of $12,000.00 which he paid to the plaintiff. This money was not actually lost by him until he paid it. See *McGrew v. City Produce Exchange,* 85 Tenn. 572, 4 S. W. 38, 4 Am. St. Rep. 771.

As was said in *Mann v. Gordon,* 15 N. M. 652, 110 P. 1043, 1044, which is a case very much in point: "Why should this rule apply any more when the loser pays before leaving the gaming table than a month afterwards? The loser is entitled to recover money or property lost by him 'at any game of cards or at any gambling device.' Is not the money lost as in this case, at roulette, paid to the winner six weeks after the game, just as much lost as if paid at the moment the game was finished? Surely the loser lost, and just as surely the loss was at the game or gambling device. Does not a man pay as much voluntarily when he pays before he leaves the table as after it? The argument of appellant loses force when it is considered that the asserted claim is no more invalid six weeks after the game than it was at the moment the game was played, or in other words, the payment would have been as voluntarily made if at the time of the game as six weeks afterwards."

The statute (Sec. 6308) provides that if anyone shall lose the sum or value of fifty dollars, "and shall pay or deliver the same or any part thereof, (he) shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid or delivered, or any part thereof * * *." There is no specific requirement that payment be made upon the conclusion of the gambling game.

Although this specific question is not directly involved in the case of *Owen v. Davis*, 1829, 1 Bailey 315, the court clearly indicated that the action by the loser for recovery accrued at the time of payment. In that case, the plaintiff and the defendant were joint winners, at cards, of a sum of money, for which the loser gave his note to the defendant alone. The latter transferred the note in payment of a debt of his own, and the transferee subsequently received payment from the loser. More than three months had elapsed since this payment, and the court held that the plaintiff could recover from the defendant his share of the money paid by the maker of the note, because the maker of the note, who was the loser in the gambling game, could not recover the amount of his loss since his right to bring such suit was limited to three months from the date of payment. To the same effect see *Hockaday v. Willis*, 1 Speers 379, 40 Am. Dec. 606, and *Atchison v. Gee*, 4 McCord 211, 15 S. Car. L. 211.

The money lost in a dice game, as in this case, and paid to the winner, in whole or in part, one month or eight months after the game is just as much lost to the loser as if paid at the moment the game was finished.

Appellant relies upon *Welloch v. Bobo*, 1824, 1 Harp. 421, 16 So. Car. L. 421, as authority for the proposition that the plaintiff lost nothing more than the void postdated check which he gave in settlement of his gambling loss, and that the subsequent payments in cash aggregating $12,000.00, being purely voluntary payments, no recovery can be had thereon.

In *Welloch v. Bobo, supra,* the plaintiff lost on a horse race a note given by him for $500.00, which he discharged six months thereafter by delivering to the winner the horse, saddle, bridle and sundry securities. He then brought action against the winner on the statute, 9th Anne, c-14, then of force, to recover treble the amount, that statute providing as follows: "It shall be sufficient for the plaintiff to allege that

the defendant or defendants, are indebted to the plaintiff, or received to the plaintiff's use the moneys so lost and paid, or converted the goods won of the plaintiff to the defendant's use    *    *    *."

The declaration contained two counts: the first, was the general count for money had and received; the second charged that the defendant converted to his own use the goods and chattels hereinabove referred to. The court granted a nonsuit on motion of the defendant, and held that the note was the thing lost, and not the money claimed in the first count, nor the goods charged to be converted in the second count.

The action in the *Welloch case* was for a penalty—that is, treble the amount which was lost on the horse race—and the court gave a strict and technical construction of the statute. The natural inference is that the court considered that the loser wagered a note which evidenced a pecuniary obligation payable only in money. The loser did not pay the indebtedness with money, but substituted in place of money, goods and chattels which were not the consideration of the wager, nor the subject of conversion in connection with the betting contract made.

Be that as it may, it is rather difficult to see any worthwhile distinction between payment of the note in money, and payment by the delivery of property accepted in lieu of money, and in full settlement of the gambling debt.

In no event, however, is the *Whelloch case* controlling here, because the facts are altogether different. As hereinabove indicated, the later case of *Owen v. Davis,* 1 Bailey 315, is more in point, and strongly tends to support the defendant's position.

The contention is made that the defendant, Mauldin, is barred by lapse of time; that the statute (Sec. 6308) requires that the action to recover be commenced within three months, and that the counterclaim

shows that the defendant did not commence his action within three months of the time of his loss.

As we construe the statute, a cause of action accrued to the defendant Mauldin each time he made a payment on the gambling debt, and he had three months from the date of each payment within which to bring an action thereon. Having failed to do this, is he now barred by the limitation period provided in the statute? We do not think so.

As pointed out in the order of the lower court, the plaintiff is a resident of Tennessee, and has been residing in that state at all times since the gambling loss occurred in October, 1946.

Section 358 of the Code provides: "If, when the cause of action shall accrue against any person, he shall be out of the State, such action may be commenced within the terms herein respectively limited after the return of such person into this State; and, if, after such cause of action shall have accrued, such person shall depart from and reside out of this State, or remain continuously absent therefrom for the space of one year or more, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action."

The case of *Burrows v. French*, 34 S. C. 165, 13 S. E. 355, 27 Am. St. Rep. 811, construed this section. It was held that the Code section above quoted applies not only to a resident of this state who has gone abroad temporarily, and then returns, but it also applies to one who has never been a resident and who comes for the first time within its limits. We therefore sustain the trial court in overruling this ground of the demurrer.

Judgment affirmed.

BAKER, C. J., and TAYLOR, J., concur.

STUKES and OXNER, JJ., concur in part and dissent in part.

STUKES, Justice (dissenting in part).

After careful consideration I am constrained to dissent from that portion of the opinion of Mr. Justice Fishburne which sustains against demurrer respondent's counterclaim for payments made by him upon the gambling obligations. (With the other conclusions I agree.)

I disagree because I think that respondent's payments which go to make up the counterclaim were voluntary and made with full knowledge of all relevant facts which precludes recovery, S. C. cases in 26 Southeastern Digest, Payment, Key 82, page 906, and the case does not come within the exception created by the statute Code sec. 6308. Moreover, at common law the parties to a gambling transaction stand *in pari delicto* and money lost and paid over cannot be recovered. 16 Southeastern Digest, Gaming, Key 26 *et seq.* page 733 *et seq.*

In my view *Whelloch v. Bobo,* 1 Harp. 421, is conclusive authority in this court and is not weakened by *Owen v. Davis,* 1 Bailey 315. The latter was a contest between the winners and recovery was allowed. Vital distinction between the cited cases is made clear by the numerous authorities which were reviewed in our recent decision of *Pendarvis v. Berry,* 214 S. C. 363, 52 S. E. (2d) 705.

The *New Mexico case* relied upon, *Mann v. Gordon,* 15 N. M. 652, 110 P. 1043, was decided by a closely divided court. Our case of *Whelloch, supra,* was discussed by the majority and repudiated, apparently partially because of its venerability. On the other hand, the minority opinion contains a clear exposition of the reasoning and result of the *Whelloch case,* to which reference may be had, and the minority of the court, consisting of two out of five Justices, would have followed it. More important upon the inapplicability of the New Mexico decision is the generality of their brief statute, which follows: "Any person who shall lose any money or property at any game of cards, or at any

gambling device, may recover the same by action of debt, if money; if property, by action of trover, replevin or detinue." Comp. Laws 1897, § 3199.

Our statute (Code sec. 6308) permits recovery of an ordinarily irrecoverable voluntary payment under the circumstances stated in the statute, namely, when plaintiff "at any time or sitting * * * lose * * * the sum or value of fifty dollars, and shall pay or deliver the same * * *." It seems to me that the very terms of the statute exclude its application to this case where a void obligation (Code sec. 6311) was subsequently given for the loss and months afterward voluntary payments were made on the void obligation. I do not think that the aid of the court should be extended to a violator of the law further than expressly authorized by the statute. Should the legislature have intended to make the terms of it applicable to the facts of this case, that is to subsequent voluntary payments upon a void obligation issued for the loss, it would have so provided. I think it is beyond liberal construction to enlarge the statute so as to apply here.

For the reeasons stated I would sustain the demurrer to the counterclaim.

OXNER, J., concurs.