16300

ROBINSON v. PILGRIM HEALTH & LIFE INS. CO.

(57 S. E. (2d) 60)

Messrs. *D. Camille Hutson* and *L. A. Hutson*, of Orangeburg, *for Appellant*,

Mr. *Julian S. Wolfe*, of Orangeburg, *for Respondent*,

December 29, 1949.

OXNER, Justice.

On November 21, 1947, the Pilgrim Health & Life Insurance Company issued a policy of insurance for $1,000.00 on the life of Winston Wesley Robinson in which his wife, Ruby Janet Robinson, was designated as beneficiary. The insured died on May 25, 1948. The Company denied liability upon the ground that the insured made false representations in his application, and upon the further ground that he was not in good health at the time of the delivery of the policy in that he was suffering from miliary tuberculosis which subsequently caused his death. The Company offered to return to the beneficiary all premiums paid. She declined to accept them and on June 15, 1948, brought this action to recover the face amount of the policy, with interest. At the

conclusion of all the evidence, each party made a motion for a directed verdict. The Court directed a verdict in favor of the Company upon the ground that the policy was procured by false representations. From the judgment entered thereon, the beneficiary has appealed.

The application for the policy is dated November 11, 1947. It was therein provided: "That the insurance applied for shall not take effect unless and until the policy is delivered to and received by the applicant, while in good health and free from injury,   *   *   *." Among other information given in the application signed by the insured was the following:

"Have you ever been sick or afflicted in any way, or met with any accident, or undergone any surgical operation, or have you consulted a Doctor concerning your physical condition: (If "yes", give full details as required below.)
"No.

                    *    *    *

"Are you now and generally in sound health?
"Yes.

                    *    *    *

"Has any insanity or tuberculosis developed in your family, or have you been associated with any tubercular persons within the past eighteen months?
"No."

The beneficiary testified that she was present when the application was filled out and admitted that the agent correctly inserted the answers given by the insured in response to the questions read to him. No fraud or unfairness is claimed in this respect. At the time the application was signed, the insured paid the first quarterly premium and was given a receipt upon the reverse side of which it was stated that the insurance applied for "shall not take effect until and unless the policy is delivered and received by the applicant while in good health." No medical examination was

required. The policy was delivered to the insured about ten days after the filing of the application. Among the general provisions contained therein, it was agreed that "all statements of the insured shall in the absence of fraud be deemed representations and not warranties." It was further stipulated: "This policy shall not take effect until delivered during the lifetime and good health of the insured and the first premium paid."

Dr. Cone, a general practitioner in the City of Orangeburg where insured resided, testified that the insured first visited him in June, 1946, and he made a tentative diagnosis of tuberculosis. He called in Dr. Brabham, a surgeon of Orangeburg, for consultation. Dr. Brabham testified as follows: "According to my notes made at the time he (insured) had intestinal trouble, had fever and night sweats, loss of weight and so on, abdomen distended and it was tight, no fluid. My impression was that he had tubercular peritonitis. We advised an operation and he was operated on July 2, 1946. On operation we found this peritonitis, intestine inflamed, looked like a deep peritonitis. We removed enough tissue for a microscopic examination. This was done pathologically at the Medical College in Charleston by Dr. Lynch, and it was tubercular peritonitis. He left the hospital July 15th."

After said operation the insured was treated by Dr. Cone. This physician stated that there was very little that he could do and that the patient's condition grew progressively worse, finally resulting in his death on May 25, 1948. Dr. Cone further testified that shortly after the operation was performed, he frankly discussed the situation with the members of insured's family and instructed them as to the precautions to be taken in order to prevent communication of the disease to others in the home, and that he also advised the insured of his condition. He said that the insured knew that "he had a hopeless disease."

The foregoing testimony given by Drs. Cone and Brabham was uncontradicted. It thus conclusively appears that in July, 1946, the insured was operated on for tuberculosis "of the coverings of the intestines" and shortly thereafter was definitely informed of his condition. He grew steadily worse. In November, 1947, approximately sixteen months after the operation and six months preceding his death, the insured falsely stated in his application that he had not consulted a physician concerning his physical condition and had not undergone any surgical operation; that no tuberculosis had developed in his family; and that he was then generally in sound health. He agreed in said application: "* * * I have made said answers for the purpose of inducing the Pilgrim Health & Life Insurance Company to issue said policy, and I understand that they are each material to the risk and that said Company will, and I agree that it shall, rely and act solely upon my said answers in passing upon my application." The false statements mentioned, relating to facts material to the risk, were knowingly made with the intent to deceive the insurer. This is not a case where the insured at the time of making his application was suffering from an incurable malady of which he was unaware. On the facts presented, we think the Court below correctly held that the policy was avoided as a result of the false representations contained in the application. The evidence warrants no other reasonable conclusion. This case cannot be soundly distinguished from *Johnson v. New York Life Insurance Co.,* 165 S. C. 494, 164 S. E. 175; *McLester v. Metropolitan Life Insurance Co.,* 175 S. C. 425, 179 S. E. 490; *Murray v. Metropolitan Life Insurance Co.,* 193 S. C. 368, 8 S. E. (2d) 314, cases in which it was held that there was fraud as a matter of law. As stated in *Johnson v. New York Life Insurance Co., supra* [165 S. C. 494, 164 S. E. 177], "we recognize that, ordinarily, the question of fraud in a case of this kind is for the jury," but here the only reasonable inference warranted by the undisputed facts

is that the policy was procured by fraud. The conclusion we have reached is not in conflct with the recent decisions of this Court in *Metropolitan Life Insurance Co. v. Bates,* 213 S. C. 269, 49 S. E. (2d) 201, and *Mickle v. Dixie Security Life Insurance Co.,* —— S. C., —— S. E. (2d) —— Under quite different circumstances, it was held in each of these cases that the evidence was sufficient to warrant the submission of the issue of fraud to the jury.

We find it unnecessary to determine whether the provision in the policy that it was not to "take effect until delivered during the lifetime and good health of the insured" constitutes a condition precedent to liability, so as to relieve the insurer from the burden of proving the ordinary elements of fraud. A discussion of this question will be found in *Cooley v. Metropolitan Life Insurance Co.,* 153 S. C. 280, 150 S. E. 793, *Crocker v. Life Insurance Co. of Virginia,* 183 S. C. 439, 191 S. E. 312, and other cases. The decision of the Court below was not placed upon this ground and it is only casually mentioned in respondent's lengthy brief.

Appellant further contends that the Insurance Company waived any right it may have had to avoid the policy and is also estopped to assert its invalidity. It is argued that respondent's local agent who solicited this insurance was aware of insured's condition when the policy was issued and having such knowledge continued thereafter to collect the premiums as they became due. It is true that there is testimony to the effect that this agent and the insured, both Negroes, knew each other well and were often seen together. Appellant also claims that the soliciting agent knew that the insured had undergone an operation but it does not appear that he had any knowledge of the nature of such operation. There is no testimony tending to show that this agent knew that the insured had tuberculosis or that the insured's personal appearance was such as to indicate the presence of that disease. Appellant denied that she had any knowledge that her husband was suffering from tuber-

culosis until about two weeks before his death. If so, it is difficult to understand the basis of her claim that the agent should have had such knowledge. It should be added that this agent testified that he did not learn that an operation had been performed on the insured or that he had tuberculosis until after his death.

Waiver is further sought to be established by the ■ conduct of the soliciting agent after insured's death. Appellant claims that he asked her to postpone filing proof of death for a period of about ten days, at which time proof of death was filed and the policy surrendered. Within three days the Company returned the policy, denied liability and offered to return all premiums paid. Nothing was done to mislead appellant. There was never any recognition of liability. The circumstances mentioned afford no basis for a claim of waiver or estoppel.

It follows that the liability of the respondent is limited to the amount of premiums paid with interest.

All exceptions are overruled and the judgment below affirmed.

BAKER, C. J., and FISHBURNE, STUKES, and TAYLOR, JJ., concur.