## 16605

**LIPSEY v. LIFE INS. CO. OF GEORGIA**
(70 S. E. (2d) 349)

292

*Messrs. Bailey & Buckley,* of Charleston, *for Appellant,*
cite:

*Messrs. S. S. Seideman* and *Morris D. Rosen,* of Charleston, *for Respondent,* cite:

March 24, 1952.

OXNER, Justice.

On September 16, 1947, the Life Insurance Company of Georgia, pursuant to application dated August 21, 1947, issued a policy of insurance for $1,000.00 on the life of Madison A. Lipsey in which his son, Robert Lee Lipsey, was designated as beneficiary. The insured died on November 24, 1947. The Company denied liability and offered to return to the beneficiary all premiums paid. He declined to accept them and on June 17, 1948, brought this action in the Civil and Criminal Court of Charleston to recover the face amount of the policy, with interest. The only defense interposed by the Company was that the policy was procured by false representations. At the conclusion of the testimony, the Company made a motion for a directed verdict, which was refused, and the jury returned a verdict in favor of the beneficiary. Thereafter the Court refused a motion for judgment *non obstante veredicto*. The Company appealed to the Court of Common Pleas for Charleston County. That Court affirmed the judgment of the Civil and Criminal Court. This appeal followed.

Among other information given in the application signed by the insured was the following:

"Name all symptoms, diseases or disorders for which you have consulted a physician or other practitioner during the last five years. Give dates and particulars. If none, so state.

"Yes, Malaria—1945. Dr. Wild, N. Charleston, S. C.

"Have you ever had a surgical operation, or been a patient in a hospital or sanitarium? If so, explain fully.

"No."

\* \* \*

"Have you ever had gall bladder or kidney disease or colic, indigestion, or ulcer of the stomach or duodenum, or syphilis?

"No.

"Have you had any disease, impairment or deformity, or have you consulted a physician or other practitioner for any cause not mentioned above? Explain.

"No.

"Are you now in good health?

"Yes."

The Company claims that the information given in the foregoing answers was false and that said statements were made with the intent to deceive and defraud the insurer. The only evidence offered in support of this defense was that of Dr. Steinberg, the pertinent portion of which is as follows:

"Q. Will you state whether or not you had occasion to have Mr. Madison Lipsey under your treatment in 1943? A. Yes, I did.

"Q. Where was he living? A. North Charleston.

"Q. Did you attend him for an illness in 1943? A. Yes, sir.

"Q. Did you have to hospitalize him? A. In 1943, yes, sir.

"Q. Give us a report of your findings.

\* \* \*

"A. Mr. Lipsey was under my care in the hospital for malaria proper and incidentally syphilis.

\* \* \*

"Q. In regard to syphilis, what did you have down as to that? A. Yes, he had syphilis.

"Q. You have your notes? A. Yes.

"Q. What was your diagnosis finally? A. Malarial fever and syphilis tertiary.

"Q. What is that? Syphilis has three stages; primary, where you have original lesions, usually some sores. Secondary, if untreated, in about six to twelve weeks, which may have a form of a rash or sore throat. Teritary is anything beyond secondary syphilis, it is syphilis that has gone beyond the primary and secondary stages.

"Q. This syphilis was in its third stage? A. Tertiary, yes, third stage.

"Q. What type of treatment did you give him at that time?

"The Court: That is not important.

"Q. Did you advise the patient of that? A. The patient was cognizant of the fact.

"The Court: He asked you whether you advised him? A. Yes, sir.

"Q. You so treated him for that? A. In a fashion."

"Cross Examination

"By Mr. Seideman:

Q. Now I ask you this; at the time Mr. Lipsey was in St. Francis Hospital he was with a severe case of malaria? A. Yes, sir.

"Q. So much so he had high fever? A. Yes, sir.

"Q. So much so that he perspired very freely? A. Yes.

"Q. Just advise me, isn't it true and a fact that in severe cases of malaria if a Wassermann test is taken they will show positive? A. Correct.

"Q. When a Wassermann is taken, for Syphilis, it can return positive for other reasons than syphilis? A. Yes.

\* \* \*

"Q. What was the last year that you saw him? A. I saw him in 1943.

"Q. That was the last, when he was in the hospital for about seven to ten days? A. Yes."

When the insured applied for this insurance, he was 56 years of age and appeared to be in good health. At that time he and his son ran a fishing camp at Wilson's Landing, Pineville, S. C. On the day after the application was signed, insured was examined by a physician selected by the Company, who found nothing wrong with him. Among other information given in the report of the medical examiner is the following:

"Does applicant's appearance indicate health and vigor?
"Yes.

"Has the applicant ever had syphilis or other venereal disease?
"No."

On trial of the case this physician said that he had no independent recollection of examining insured, but that he "must have been passable because I recommended him and he was accepted." He further testified that if he had known that insured had ever had syphilis, he "would have gotten a blood test."

There is no testimony showing that insured was ever treated for syphilis after 1943, or that he had this disease at the time of making application for the insurance. Nor is there any showing that syphilis contributed in any manner to insured's death. The cause of death is given in the death certificate as "cirrhosis of liver". The Company offered no testimony to the effect that if they had known that the insured had syphilis in 1943, the policy would not have been issued, or that such fact would have increased the risk.

We shall first discuss the question as to whether the Court erred in refusing the Company's motion for a directed verdict upon the ground that the undisputed testimony showed fraud and deceit as a matter of law. (It is not claimed that the statements in the application constituted warranties.)

We have just had occasion recently in the case of ■ *Reese v. Woodman of World Life Insurance Society,* *S. C.*, 69 S. E. (2d) 919, to discuss the elements necessary to be shown in order to avoid a policy on the ground of false statements in the application. There is no necessity to again review our decisions relating to this subject. It is sufficient to say that it is incumbent upon the insurer to show not only that the statements complained of were untrue but, in addition, "that their falsity was known to the applicant, that they were material to the risk and relied on by the insurer, and that they were made with intent to deceive and defraud the company." *Johnson v. New York Life Insurance Co.,* 165 S. C. 494, 164 S. E. 175, 176.

With reference to the failure of insured to disclose ■■ that he suffered an attack of malaria in 1943 and was confined to a hospital for approximately a week,

it cannot be said as a matter of law that this was material and made with intent to defraud the Company. The fact that insured frankly stated in his application that he had been treated for malaria in 1945 by Dr. Wild is a strong circumstance tending to show that there was no intention on his part to fraudulently conceal from the insurer the fact that he had had malaria. If the Company concluded, as it evidently did, that such an illness suffered in 1945 was not material, it might well be concluded by the jury that the failure to disclose a similar illness in 1943 was likewise not material. "The question of the materiality of the statement with regard to the risk involved is a relevant matter for consideration in determining whether a false answer was made with intent to deceive." *Evans v. Penn Mutual Life Insurance Co. of Philadelphia*, 322 Pa. 547, 186 A. 133, 138.

We next consider the claim that the insured fraudulently concealed the fact that he had syphilis in 1943. While Dr. Steinberg was of opinion that in 1943 insured was suffering from the third stage of syphilis, he admitted on cross examination that the result of any Wassermann test given while a patient is suffering from a severe case of malaria may not be accurate. Insured is dead and the beneficiary is not in a position to explain his negative answer to the question of whether he had ever had syphilis. He may have doubted the diagnosis of Dr. Steinberg and upon recovery from his attack of malaria, had a further examination which showed that he did not have this disease. As stated in *Wingo v. New York Life Insurance Co.*, 155 S. C. 206, 101 S. E. 653, 656, "A court, on a motion for nonsuit, is not warranted to say that an applicant was bound at his peril to believe in a diagnosis of his ailment." But assuming that he had syphilis in 1943, the treatment administered by Dr. Steinberg may have been successful. At least there is no evidence that insured was ever again treated for this disease and the report of the medical examiner is some evidence that he did not have it at the time he applied

for this insurance. It is not claimed that syphilis in any way contributed to his death. Nor is there any showing that if he had this disease in 1943, this fact would have enlarged or increased the risk. Under these circumstances, we cannot say as a matter of law that the policy should be avoided upon the ground that the insured falsely stated that he never had syphilis.

The only other question raised by the exceptions is that the Court erred in charging the jury that the insurer may waive its right to avoid a policy on the ground of misrepresentations. The instructions given the jury were in accord with the well established rule in this State, "That the examination of an applicant for insurance, who is afterwards accepted by a physician selected by the insurer, is some evidence of one of two things: (1) That a disease which would have prevented the policy from being issued did not exist; or (2) that its existence was known and waived by the insurer, unless the physician's failure to discover a disease of the insured was due to the fraud of the applicant." *Crumel v. Metropolitan Life Ins. Co.*, 179 S. C. 338, 184 S. E. 169, 172.

The correctness of the foregoing general principle is not challenged. The complaint is that it is not applicable to the facts of this case. We think it is. If insured had syphilis when he applied for this insurance, it cannot be said as a matter of law, that the failure of the medical examiner to discover the disease was due to the fraud of the insured. This presented an issue of fact for determination by the jury. *McLane v. Metropolitan Life Insurance Co.*, 154 S. C. 366, 151 S. E. 608. Moreover, under the case of *Gamble v. Metropolitan Life Insurance Co.*, 95 S. C. 196, 78 S. C. 875, if there was no evidence supporting the theory of waiver, counsel should have called the attention of the Court to that fact.

Judgment affirmed.

Fishburne, Stukes and Taylor, JJ., and G. Badger Baker, Acting Associate Justice, concur.