19744

William B. WINBORN, as Executor of the Estate of Olieva G. Winburn, Appellant, v. The MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Respondent.

(201 S. E. (2d) 372)

570

Messrs. *George W. Gregory, Jr.,* of Cheraw, and *Frank K. Sloan,* of Columbia, *for Appellant,* cite:

*Messrs. McKay, Sherrill, Walker, Townsend & Wilkins,* of Columbia, *for Respondent,* cite:

December 18, 1973.

Moss, Chief Justice:

This action was instituted by William B. Winburn, as executor of the estate of Olieva G. Winburn, deceased, the appellant herein, to recover under a policy of insurance with the Minnesota Mutual Life Insurance Company, the respondent herein, on the life of Olieva G. Winburn.

It is alleged in the complaint that on November 18, 1969, in connection with a loan made to her by the Federal Land Bank of Columbia, South Carolina, Olieva G. Winburn made application for life insurance in the amount of $6,-000.00; and on December 11, 1969, the application was approved and a policy of insurance issued with the proceeds, in the event of the death of the insured, payable to the Federal Land Bank of Columbia as its interest might appear; otherwise, to the legal representative of her estate. It was further alleged that on October 13, 1970, while the insurance was in full force and effect, the insured died as a result of an automobile accident. It is then alleged that the appellant, in his representative capacity, has made proof of death and due demand on the respondent for payment of the amount of insurance, which demand has been refused.

The respondent, by its answer, admits that it issued its policy upon the life of Olieva G. Winburn pursuant to her written application, dated November 18, 1969, with the primary beneficiary being the Federal Land Bank of Colum-

bia, South Carolina, as its interest might appear; otherwise, to the legal representative of the insured. The respondent further alleged that it required no physical examination of the applicant for insurance and relied entirely on the statements contained in her application. As a defense, the respondent alleged that the policy was void from its inception and should be rescinded on account of fraudulent representations made by the insured. The answer alleged that the insured had falsely and negatively answered two questions contained in the application, which were as follows:

"1. Do you know of any impairment now existing in your health or physical condition?

"2. Have you consulted a physician for any illness during the last three years?"

This case came on for trial before The Honorable Dan F. Laney, Jr., Presiding Judge, and a jury, at the 1972 December Term of the Court of Common Pleas. At the close of all of the testimony, the motion of the respondent for a directed verdict was granted upon the ground that the only reasonable inference to be drawn from all of the testimony was that the policy was procured by false and fraudulent representation. This appeal followed.

The appellant asserts that the trial judge committed error in refusing to permit him to testify as to the authenticity of the insured's handwriting on the application for insurance.

The appellant alleges in his complaint that "Olieva G. Winburn made application for insurance" and "said application was approved" and the policy on which this action was based was issued. The respondent, by answer, admitted the truth of this allegation. At the beginning of the trial, the appellant offered in evidence as its first exhibit the application for insurance. William B. Winburn, the son of the insured and the executor of her will, was called as a witness. He was asked if he was famiilar with his mother's handwriting and by his testimony an attempt was made to show

that she did not fill out the application for insurance. Objection thereto was made by the respondent and sustained by the trial judge. During the course of the colloquy between the trial judge and counsel for the appellant, it was admitted that the insured signed the application, but he contended that she did not fill it out. In sustaining the objection the trial judge pointed out that it was alleged in the complaint that the insured made application for the insurance.

All parties to this action admit that the insured signed the application. Assuming, as is contended by the appellant, that someone other than the insured filled out the application, the insured ratified and approved the application by affixing her signature thereto. The appellant makes no contention that the insured, at the time of the making of the application, gave true and correct answers to the questions therein, nor does he offer any evidence that false answers were inserted in the application by any third person. We know of no requirement that an application for insurance be filled out in the handwriting of the insured, and testimony as to the authenticity of the handwriting on the insurance application would have no relevancy as to any issue in the case. It has been held that no evidence will ever be received unless it is relevant to some issue in the case being tried. In *Francis v. Mauldin,* 215 S. C. 374, 55 S. E. (2d) 337, we held all that is required to render evidence admissible is that the facts shown legally tend to establish, or to make more or less probable, some matter in issue, and to bear directly or indirectly thereon. Relevancy of evidence means the logical relation between the proposed evidence and a fact to be established. We concur with the view expressed by the trial judge that the proffered evidence had no relevancy to any issue in the case.

The appellant alleges that the trial judge was in error in refusing his counsel permission to cross-examine the underwriting manager of the respondent as to its agency relationship with the Federal Land Bank.

Assuming, without deciding, that an agency relationship did exist, it did not relieve the insured of the consequences of her fraudulent representations unless, at the inception of the contract of insurance, the Federal Land Band had knowledge of facts which would render the policy void at its option. If the Federal Land Bank had such knowledge and was an agent of the respondent, such knowledge would be imputable to the respondent.

There is a total absence of any testimony that the Federal Land Bank had any knowledge or had been informed of the insured's previous medical history or physical condition. The appellant suggests in his argument that the insured signed a blank application form at the time of the closing of the loan. This position is not supported by any evidence in the record. Under the factual showing in the record, we find no error on the part of the trial judge in refusing to allow cross-examination as to the respondent's agency relationship with the Federal Land Bank.

The appellant, further contends that the trial judge erred in permitting one physician to read into the record from a medical report the opinion or diagnosis of another physician, the error being that the admission of such evidence would be a violation of both the best evidence and hearsay rules.

The contention of the appellant that the admission of the medical report violated the best evidence rule is without merit for the reason that no such objection was made at the time this report was offered in evidence; and further, there is no exception raising this question.

The appellant did object to the admission of the medical report upon the ground that such was hearsay and inadmissible. This contention is without merit for the reason that the report was not offered for the truth of the matter asserted. However, it was offered solely to prove that the insured knew or had reason to know, at the time of her application, that she had heart disease, and not to prove the fact that she suffered from heart disease. Be-

cause the insured must have had notice that she was suffering from heart disease, the respondent offered this report as proof that she had perpetrated a fraud upon it when filling out the insurance application.

It would, therefore, not be improper for the respondent to offer proof that Olieva Winburn had obtained knowledge of her heart condition, inasmuch as the evidence was not offered to prove the existence of the heart disease, but solely to prove, notice of such, which is a state of mind; and thus the hearsay rule does not apply. *Player v. Thompson,* 259 S. C. 600, 193 S. E. (2d) 531.

The appellant charges the trial judge with error in admitting in evidence an unauthenticated Social Security application form.

It appears from the record that on July 25, 1968, the insured visited the office of Dr. Walter R. Wiley and gave him a Social Security "Request for Reconsideration" application which stated: "I feel I was totally disabled prior to October 30, 1967. I have had spells since 1961 and I do not feel I have been able to work since then. I think I should be entitled to Social Security benefits." There was a statement in the request that the applicant was submitting additional evidence which was "Dr. Wiley—Chesterfield, S. C." It appeared to Dr. Wiley that this request had been signed by Olieva Winburn even though he could not identify her handwriting. As a result thereof, Dr. Wiley examined the insured, completed his medical report, and mailed his findings with the insured's application to the Social Security office. There is no evidence contrary to Dr. Wiley's statement, and the only reasonable inference is that the insured brought to the office of Dr. Wiley a filled out "Request for Reconsideration" of her Social Security application and that he, after his examination of the insured, filled out his medical report and submitted both to the Social Security office.

> The proof of authenticity required preliminary to the introduction of an instrument in evidence need not be direct proof. Authenticity of documentary evi-

dence may be shown, so as to render it admissible in evidence, by indirect or circumstantial evidence. *State v. Wilson,* 246 S. C. 580, 145 S. E. (2d) 20. It is our conclusion that the evidence offered by the testimony of Dr. Wiley sufficiently connected the insured with the "Request for Reconsideration" application to warrant its admission in evidence. It follows that there was no error on the part of the trial judge in admitting the application in evidence.

The final question presented by the appellant is whether the trial judge erred in granting the respondent's motion for a directed verdict.

The uncontradicted evidence is that the insured consulted physicians on numerous occasions within three years prior to her application for insurance. The insured was hospitalized in March or April of 1968 for a period of nine days, and, according to the testimony of her physician, she had an infected right Bartholin's gland cyst, an upper respiratory infection, subacute bronchitis, and hypertensive arteriosclerotic heart disease, with coronary insufficiency. The physician also testified that he discovered the angina in June of 1963, at which time he prescribed the use of nitroglycerin for this condition and that she was still suffering from angina when he examined her in March or April of 1968, when he again prescribed the use of nitroglycerin. The physician testified that the insured was aware of her condition because he had informed her of the diagnosis.

It is conclusive from the evidence in this record that the insured knew of the impairment of her health and that she had consulted a physician for an illness during the three years immediately preceding the filing of her application for insurance.

It is uncontradicted that the statements of the insured in the application were untrue and known to her to be false and that they were material to the risk and relied on by the respondent. It is undisputed from the testimony of the underwriting manager of the respondent that the statements in

the application were material to the risk and the insured's application would have been rejected had the questions been answered truthfully.

In this case the undisputed facts give rise to but one reasonable inference, namely, that the policy was procured by fraud on the part of the insured, and this voids the policy.

We recognize that ordinarily, the question of fraud in a case of this kind is for the jury, but we feel that this is one of those rare cases where the only reasonable conclusion from the uncontradicted facts is that the insured intended to deceive and defraud the respondent when she deliberately suppressed the truth and gave false answers as to her health or physical condition and prior medical treatment, of which she had full knowledge. *Johnson v. New York Life Ins. Co.,* 165 S. C. 494, 164 S. E. 175; *Robinson v. Pilgrim Health & Life Ins. Co.,* 216 S. C. 141, 57 S. E. (2d) 60; *Reese v. Woodmen of World Life Ins. Society,* 221 S. C. 193, 69 S. E. (2d) 919, and *Nationwide Life Ins. v. Attaway,* 4 Cir., 254 F. (2d) 30.

It follows that there was no error on the part of the trial judge in directing a verdict for the respondent.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting):

Being convinced that there was reversible error in more than one particular, I most respectfully dissent. It is elementary that in the consideration of a motion for a directed verdict by a defendant, all of the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. It is also well settled

that where an insurer seeks to avoid liability under a policy on the ground of contended fraud in the application, the burden is upon such insurer to prove such affirmative defense by clear and convincing evidence. See numerous cases collected in West's South Carolina Digest, Insurance, Key Nos. 301.2 and 301.4.

Viewing the evidence in the record, including some clearly admissible evidence erroneously excluded by the trial judge, in the light of the foregoing principles, I have no difficulty in concluding that the defendant's motion for a directed verdict should have been refused and the case submitted to the jury. In September 1958, the defendant insurer issued its group policy to the Federal Land Bank of Columbia whereby it agreed, among other things, "to insure the lives of persons indebted to the Bank for loans on farm property." In 1960, when the husband of plaintiff's testate died, Mrs. Winburn took over the operation of the Winburn farm and continued such until her death. When her husband died, the farm was under mortgage to the Federal Land Bank, which mortgage was assumed and paid off by Mrs. Winburn. For some four or five years, however, she was an insured under the aforesaid group policy issued to the Federal Land Bank of Columbia in 1958, the precise years not appearing in the record.

She again became an insured under said policy when, on November 18, 1969, she applied to the Federal Land Bank for another loan in the amount of $6,000.00, at which time the Federal Land Bank took her application for insurance, in the amount of the loan, which coverage is currently in litigation. Said application is in evidence and reference thereto shows that it is on a relatively brief printed form obviously prepared for use by the Federal Land Bank and the defendant in providing insurance under said group policy. It is entitled "Application for insurance covering indebtedness to—The Federal Land Bank of Columbia". The form contains only two questions as to the health of the applicant,

both of which are stated in the majority opinion, and opposite each of them on the form are small boxes for checking "yes" or "no", and in each instance the "no" box was checked on the particular application. It is clearly inferable that credit life insurance was at least encouraged, if not required, by the Federal Land Bank.

Mrs. Winburn's lips are sealed by death, and incidentally, death not at all attributable to any bad health on her part, now asserted by the defendant to be a material consideration. In anticipation of the asserted defense of fraud in procurement, her son and executor, who was not present at the signing of the application for the loan and the purely incidental application for credit insurance, sought to testify from his familiarity with his mother's handwriting that the application, while signed by her, had not been filled out by her. Objection was interposed and sustained on the ground that he was not a handwriting expert and could not so testify. The ruling was patently erroneous. See *Stoddard v. Hill,* 38 S. C. 385, 17 S. E. 138; *Desbrow's Assignees v. Farrow,* 3 Rich. 382, 37 S. C. L. 382; 29 Am. Jur. (2d) 895, Evidence, Sec. 806.

Mrs. Winburn, according to her son, had only a sixth grade education and was not too literate. The fact that some one else actually filled in the application, I think, is a relevant circumstance to be considered along with all other circumstances of the case in determining whether or not there was, in fact, any fraudulent representation or intent on her part. Such fact has been treated with some significance in more than one opinion of this Court, including *Huestess v. South Atlantic Life Ins. Co.,* 88 S. C. 31, 70 S. E. 403.

It is clearly inferable from the evidence that the Federal Land Bank of Columbia acted as the agent of the defendant insurer in taking the application from Mrs. Winburn and that the application was purely incidental to the principal thing which she sought, to wit: a loan in the amount of $6,000.00. Other than medical evidence, the defendant of-

fered only one witness in proof of its asserted defense, to wit: an underwriter from its home office who testified as to materiality of the representations but who had no firsthand knowledge of the particular application. Counsel for plaintiff sought to cross-examine him as to the agency relationship existing between the company and the Federal Land Bank and the manner and details of handling the applications by the Federal Land Bank. This line of cross-examination was excluded by the trial judge as being irrelevant and I am of the view that such was erroneous and prejudicial, particularly since the defendant was in a better position to know just who connected with its agent, The Federal Land Bank of Columbia, had actually taken the application and what transpired at the time, the burden being upon the defendant to prove that any inaccurate answers in the application were there at the instance of Mrs. Winburn, or at least with her knowledge, and with an intent on her part to deceive and defraud the insurer.

In the final analysis, the critical issue or question in this case is whether any false representations were made by Mrs. Winburn with fraudulent intent, and the intent of a person is, of course, locked up in the heart and conscience of the person. It may be shown by express words, or deduced from the circumstances, but the law is well settled in this jurisdiction that the mere signing of an application containing answers alleged and proved to be false is not conclusive as to the intent of the applicant. *Johnson v. N. Y. Life Ins. Co.,* 165 S. C. 494, 164 S. E. 175; *Huestess v. South Atlantic Life Ins. Co., supra; Smiley v. Woodmen of World,* 249 S. C. 461, 154 S. E. (2d) 834. It is also well settled that it is only in very rare cases that a verdict should be directed for the insurer and this Court has followed a liberal policy of allowing juries to pass upon questions of alleged fraud in applications for insurance. *Atlantic Life Ins. Co. v. Beckham,* 240 S. C. 450, 126 S. E. (2d) 342. See also numerous cases collected in West's South Carolina Digest, Insurance, Key No. 301.5.

In all of the South Carolina cases cited in the majority opinion in support of the direction of a verdict in this case, there is the clearly distinguishing fact that there was evidence, *aliunde* the application itself, to prove that the inaccurate answers in the application were actually given or furnished by the applicant. Here the defendant relies on the application alone, filled out by some one other than the insured, to prove that inaccurate answers were furnished by the applicant, with intent to deceive and defraud the insurer. No case has come to the attention of the writer where a verdict has been directed for the insurer, when the only evidence of inaccurate answers being furnished by the applicant was the application itself, all decisions being to the effect that the application alone is not sufficient to be conclusive of the question favorably to the insurer upon whom the burden of proof rests.

I would reverse and remand for a new trial.