14117

PARKER v. PACIFIC MUTUAL LIFE INS. CO. OF CALIFORNIA

(183 S. E., 697)

*Messrs. Thomas, Lumpkin & Cain, Blythe & Bonham* and *Haynsworth & Haynsworth,* for appellant,

*Mr. Wilton H. Earle,* for respondent,

July 30, 1935.

The opinion of the Court was delivered by MR. M. M. MANN, ACTING ASSOCIATE JUSTICE.

This action was instituted on July 18, 1933, by the plaintiff, John Williams Parker, Jr., against the Pacific Mutual

Life Insurance Company of California, alleging total and permanent disability beginning March 1, 1927, and seeking recovery of $500.00 disability benefits for the month June 17 to July 17, 1933, under policies Nos. 4654797 and 4654798 issued on January 20, 1925, one policy carrying $300.00 per month and the other $200.00 per month disability benefits.

The defendant denied liability on the grounds hereinafter indicated. The case came on to be heard in the County Court before Judge M. F. Ansel and a jury. At the close of the testimony, both plaintiff and defendant moved for directed verdicts. These motions were overruled and the case submitted to the jury, who returned a verdict for the plaintiff in the full amount claimed.

Defendant's contention is that no reasonable conclusion could be drawn from the testimony other than: (1) That the disability from which the plaintiff claimed to be suffering resulted wholly or partly, directly or indirectly, from a sickness or disease contracted while he was engaged in military service in time of war and that this risk was expressly excluded from the insurance; (2) that the representations made by the plaintiff in his application for insurance regarding his health and medical treatment were false and materially affected the acceptance of the risk and the hazard assumed by the company, and that under the terms of the policies and the application this operated to bar recovery; (3) that the representations contained in the application were false and were made with intent to mislead and deceive the defendant company into issuing the insurance.

In order to arrive at a proper conclusion, it is necessary that the testimony in the case be fully considered.

Dr. Parker was a physician and a specialist in gastroenterology and intestinal troubles. He was engaged in the practice of medicine in Greenville prior to 1918.

On January 9, 1918, he entered the Army as a medical officer, and was stationed at Camp Wadsworth in Spartan-

burg. Subsequently, on January 15, 1918, he was stricken with a severe case of influenza and pneumonia, for which he received treatment over a period of 8 months at Camp Wadsworth, except for the period of 10 days (March 15 to March 25, 1918), when he was in Baltimore undergoing examination and treatment. He was discharged in September, 1918. Thereafter he returned to Greenville, and in April, 1919, he resumed the practice of medicine, specializing in gastroenterology, and x-ray, and was so engaged in January, 1925, when he applied for the insurance in question.

In January, 1925, Dr. Parker applied for the insurance in question and in the application agreed: "That the falsity of any answer in this application for insurance, or any answer made to the company's medical examiner in continuance of this application for insurance, shall bar the right to recovery thereunder *if such answer is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.*" (Italics mine.)

This application contained the following questions and answers:

Question No. 15: "Q. Have you ever had or have you now any bodily or mental infirmity or deformity (including hernia and rupture), or have you impaired hearing, any disease of either eye, lost a limb or the sight of an eye, or are you in any respect maimed or in unsound condition mentally or physically? A. No."

Question No. 17: "Q. Do you agree that the falsity of any answer in this application for insurance or any answer made to the Company's Medical Examiner in continuance of this application for insurance shall bar the right to recover thereunder if such answer is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the Company?" To this applicant answered "Yes."

The medical examiner's report constituting a part of the application consists of printed questions with the answers of the applicant.

Question No. 5 is, "Have you ever had or been treated for," and there follows a long list of diseases, including, "C. Influenza, Pneumonia, Pleurisy, Bronchitis, Tuberculosis?" The plaintiff underscored "influenza" and "pneumonia," answered "Yes," and, under the instruction to "give name, history, date and duration of each disease or symptom," answered, "Influenza and Pneumonia January, 1918, complete recovery."

The sixth question called upon Dr. Parker to state what illnesses or treatments by or consultations with physicians or practitioners he had had during the last seven years—to give particulars of each illness, consultations, or treatments— the date, the duration, the result, and the name and address of each physician. In reply to this question, Dr. Parker stated that he had had "influenza and pneumonia, January, 1918, with recurring attacks of influenza for eight months with 'complete recovery,'" and he gave as the names and addresses of the physicians "U. S. Army Surgeons—Camp Wadsworth."

On the strength of the foregoing application and the medical examiner's report, the two policies of insurance were issued. As will appear from the testimony to which we hereinafter refer, the statements contained in this report, which was signed by Dr. Parker and witnessed by Dr. Pack, the medical examiner, were unquestionably false.

In March, 1927, the plaintiff made application for the disability benefits under two policies and offered proof of total and permanent disability. After the time allowed for investigation as to whether he was in fact disabled, the company commenced to pay the monthly disability benefits of $500.00, and continued to pay such benefits until approximately $30,000.00 had been paid to Dr. Parker. In March, 1932, however, Dr. Parker brought suit in the United States District Court against the government on his war risk insurance policy, and in his verified complaint stated that his disability began in January, 1918, while he was in the

Army in the service of the government during a period of war, and that such disability had continued ever since. When some several months later the defendant insurance company learned of Dr. Parker's suit against the government, it declined to make further payments of the disability benefits; and the plaintiff thereafter brought suit for said installments as they came due. The insurance company defended these suits on the ground that by the allegations of Dr. Parker's complaint against the government there was no liability under the policies. Subsequently in May, 1933, prior to the trial of this case in the State Court, Dr. Parker filed a petition in the United States Court for leave to, and was allowed to, amend his complaint, by alleging that his disability had commenced in 1927, claiming that his attorneys had made a mistake in the original complaint in alleging disability ever since January, 1918.

In view of Dr. Parker's claim that his attorneys had inadvertently made a mistake in the allegation as to the time and cause of his disability, the insurance company concluded to pay the installments then due. But afterwards, having secured access to the records of the Veterans' Bureau the company learned that Dr. Parker had made several applications to the government for disability benefits *based upon the claim that he had been disabled from an illness contracted in 1918 while in service, and that this disability had continued ever since, and supported these claims by his own affidavits and by numerous supporting certificates of physicians and others.* The evidence submitted by him in connection with these applications to the government shows beyond any question that the disability which constituted the basis of his claim against the insurance company had resulted "directly or indirectly, wholly or partly," from sickness contracted while the insured was engaged in military service in time of war, and was therefore expressly excluded from the terms of the policies. It was shown also beyond any question that the representations contained in his application for

the insurance as to his health and as to his treatments by and consultations with physicians were false.

It should be remembered that Dr. Parker was a physician who had specialized in gastroenterology and was familiar with stomach and intestinal troubles. He was certainly aware of the numerous recurrent attacks of influenza accompanied by diarrhea and dysentery and of the numerous treatments by his own doctors and the many conferences with other physicians. It is impossible to suppose that he had forgotten or overlooked these facts. And he was certainly aware of their significance and materiality in connection with his application for insurance.

When the defendant company came into possession of the facts disclosed by the records of the Veterans' Bureau, it declined to make further payments, and thereupon this action was instituted.

We think that the trial Judge should have directed a verdict for the defendant upon the ground that the only reasonable inference to be drawn from the testimony was that the plaintiff's disability resulted wholly or partly from sickness contracted while he was engaged in military service in time of war, which was a risk expressly excluded from coverage by the terms of the policy, and that the insurance was procured by false and fraudulent representations.

The following is a brief statement of the facts disclosed by the records of the Veterans' Bureau:

On December 28, 1927, a claim was filed by Dr. Parker with the United States Veterans' Bureau entitled: *"Application of Veterans Disabled In The World War For Compensation And Vocational Training."* In answer to the question as to the nature of disability claimed, he answered: "T. B. and dysentery; date disability: 1918."

And in answer to the question as to the cause of disability he answered "Influenza." Under the head "Medical Survey" he was asked to give the names and addresses of all physi-

cians who treated him since his discharge, and his answer was:

"Dr. R. C. Bruce, Greenville, S. C., Lung and Dysentery, 1918 to date.

"Dr. Thomas R. Brown, Johns Hopkins Hospital, Baltimore, .Md., Lung and Dysentery, 1927.

"Dr. Frank Wrenn, Anderson, S. C., Lung and Dysentery, 1919 to date.

"Dr. Frank Lander, Williamston, S. C., Lung and Dysentery, 1918 to date."

The application concluded with a statement signed by Dr. Parker to the effect that it was made with full knowledge of the penalty provided for a false statement as to a material fact, and it was sworn to before a notary public. There can be no doubt, therefore, that at this time Dr. Parker intended Veterans' Bureau to believe that he was disabled in the World War and that his illness commenced in 1918.

Again on May 7, 1929, Dr. Parker filed with the Veterans' Bureau an "Application for Retirement," under certain conditions, of officers and former officers of the Army, Navy, or Marine Corps of the United States (other than officers of the regular Army, Navy, or Marine Corps), *who incurred physical disability in line of duty while in the service of the United States during the World War* (April 6, 1917, July 2, 1921). In this application in answer to the question "(8), State physical disability incurred during service (April 6, 1917-July 2, 1921) ; and in line of duty; when and where it was incurred," Dr. Parker stated: "Influenza about January 15, 1918, with recurrences until date of discharge *and since;* incurred at: Base Hospital, Camp Wadsworth, Spartanburg, S. C. Treated at: Base Hospital, Camp Wadsworth, from January 15, to August 31, 1918; treated at: Baltimore, from March 15, 1918, to March 25, 1918; treated at Greenville, S. C., from: *ever since.*" (Italics mine.) This was sworn to by Dr. Parker, and in addition there was attached a sworn statement of Drs. DuPre and

Sharpe to the effect that they had known Dr. Parker for 15 and 13 years, respectively, and that the statements made by him were true to the best of their knowledge and belief. Attached to the claim was a copy of Section 35 of the United States Criminal Code (18 U. S. C. A., § 80), relating to the penalty of $10,000.00 or imprisonment for 10 years or both for making any false statement or claim.

A *third* claim for permanent and total disability was sworn to and filed by plaintiff with the Veterans' Bureau August 15, 1931, wherein he represented that his disability began "prior to discharge"; that the cause of his disability was "exposure and attack of influenza received January, 1918, Camp Wadsworth."

A *fourth* claim was sworn to and filed by the plaintiff, August 15, 1931, seeking disability benefits under a policy of war risk insurance. In this claim he represented the nature of his disability to be "pulmonary Tuberculosis, Choroiditis, Retinitis, Otitis media, Mucous Colitis, Infectious Arthritis, Bronchitis, Psycho Neurosis and other disabilities"; that his disability began "prior to his discharge." He also stated that *"his entire time until January, 1927, spent in efforts to practice medicine, Greenville, S. C., work very intermittent, many break-downs."* (Italics mine.)

In proof of these claims and the statements therein contained, Dr. Parker himself procured and filed with the government letters, certificates, and sworn statements from twelve different·doctors. The purpose of all these documents was to show that Dr. Parker's disability had commenced in 1918 while he was in the Army and had continued up to the time he filed his respective claims against the government. The statements of these physicians are substantially as follows:

Dr. McCarty, under date of May 17, 1920, certified under oath that he attended Dr. Parker (who was on sick leave), on March 15, 1918; that he had had an attack of influenza and consulted him with regard to recurrences which he was

having, that his examination revealed vasilar bronchitis with emphysema, *a recurrent diarrhea due to an entiritis;* that he saw him *again in March, 1927, when he was suffering with the same symptoms and findings; and that he returned* in May 1929, with the same general condition.

Dr. R. C. Bruce, on June 26, 1929, certified under oath that in February, 1918, he saw Dr. Parker, who "was ill with influenza, later being discharged for disability"; and that since that time he had seen him "with recurring attacks of the same condition."

On September 27, 1930, Dr. Bruce furnished Dr. Parker with an additional statement to the effect that he had known Dr. Parker for the past 20 years; that during the World War Parker was a patient in the hospital at Camp Wadsworth from January, 1918, to September, 1918; that he was suffering from severe influenza and was discharged from the Army on account of physical disability in September, 1918; that since his discharge he had been Parker's physician and had "treated him at intervals of two or three months for a recurrent influenza. With these attacks he suffers from a severe cough, with elevation of *temperature accompanied always with diarrhea.*" (Italics mine.)

Again on March 12, 1932, Dr. Bruce furnished Dr. Parker with an additional written statement to the effect that he had known Dr. Parker for the past 20 years and was familiar *"with the conditions of his illness since his discharge from service in 1918;* that at intervals of a few days he has suffered from an infectious arthritis." (Italics mine.) This certificate concluded with the statement that his diagnosis of the case was mucous colitis, chronic bronchitis, and infectious arthritis, and that this condition was concurred in by several physicians.

Again on November 17, 1932, Dr. Bruce furnished Dr. Parker with a further certificate stating the character of his disease and that the condition had existed for a number of years, during which time "I have treated him at frequent in-

tervals and know of my own knowledge that they have been sufficiently severe to prohibit his working and to confine him to bed for several days at a time. These attacks have occurred two or three times each month."

The affidavit of Dr. Humphrey D. Wolfe, under date of June 26, 1929, was to the effect that he had known Dr. Parker since March, 1918, until his discharge in August, 1918, and that during this time Dr. Parker had recurrent attacks of fever and diarrhea following an attack of flu in January; that he has known him intimately since, and that Parker *"has been having similar attacks ever since."* (Italics mine.)

Dr. Wolfe furnished Dr. Parker with a further statement under date of September 23, 1930, in which he certified that he had made x-ray examinations of Dr. Parker at Camp Wadsworth; that he had flu with temperature, nausea, vomiting, and diarrhea; that in 1919 he became associated with Dr. Parker in the practice of medicine and remained with him until 1922, and had been associated with him closely since then; "that while working with Dr. Parker and since then I have seen him in numerous attacks such as described above."

Dr. W. D. Hutto, under date of September 24, 1930, certified that in January, 1918, Dr. Parker had an attack of influenza which was accompanied with severe nausea, vomiting, and diarrhea, and that "to my knowledge he has been having similar attacks ever since."

Dr. Curran B. Earle, under date September 25, 1930, certified that he had known Dr. Parker for about 20 years; that he was admitted to the Base Hospital, Camp Wadsworth, in January, 1918; that he remained there for several months, unable to work, and was finally discharged in September, 1918, for physical disability; that since his discharge "he has repeatedly had attacks of dysentery being compelled to give up his office work at various times." Continuing, he stated that he (Dr. Earle), had removed his appendix about

three years before date of certificate (September 25, 1930), and that "apparently for some months he was better, but in a few months' time he had a recurrence of his digestive disorder"; and that "at no time in the past twelve years has Dr. Parker been well for more than a few weeks at a time. During this time he has been under various doctors, has been examined by numerous ones, and so far as I am able to say, definite diagnosis has not been made."

Dr. W. H. Powe gave two certificates, one dated September 25, 1930, and the other March 1, 1932.

In the first certificate, he stated that he had known Dr. Parker intimately from 1914; that until January, 1918, he was in good health, able to do his work and did not lose any time on account of illness; that he understood that he had influenza while in the Army, accompanied with diarrhea, nausea, and vomiting; that he attended him on July 5, 1919, and made a diagnosis of influenza, and that this attack was similar to the one he had had in the Army, and that "he had numerous attacks similar to this up to the present time; that during these attacks he suffers agonizing pain in the lower bowel with tenesmus, nausea and vomiting, with high fever, and that after these attacks he is prostrated for weeks at a time." He concluded with the following significant statement: "He, Dr. Parker, evidently has some chronic disease of large intestines, which has been present since his attack in January, 1918, while in the United States Army."

In the certificate of March 1, 1932, Dr. Powe, among other things, stated that he did not see Dr. Parker after he entered the Army until 1919, that at that time he was sick, and that he (Dr. Powe), was called in to treat him at various times ever since.

Dr. Ernest Gaither of Baltimore, Md., certified under date June 16, 1931, that Dr. Parker came to see him in March, 1918; that he had chills and fever every few days, followed by severe diarrhea, nausea, and vomiting.

Dr. Frank Ferguson certified under date March 12, 1932,

that he had been a close neighbor of Dr. Parker for the past 16 years, knew him intimately, personally, and socially, and "that Dr. Parker has been sick a great deal of the time since his return from the service."

Dr. W. P. Barndollar, former Lieutenant Colonel, United States Army Medical Corps, certified under date September 25, 1931, that Dr. Parker was confined to Base Hospital, Camp . Wadsworth, "with a rather aggravated attack of mucous colitis, and that he understood that this condition has been irregularly present since his original discharge from the Hospital."

Dr. Lewellyn Sale, chief of the medical service at Camp Wadsworth, and Dr. Homer M. Daniel gave certificates as to Dr. Parker's sickness at the Base Hospital in 1918; that he had influenza accompanied by digestive disturbances and severe diarrhea.

Dr. Frank Lander, under date July 19, 1931, certified that he had known Dr. Parker intimately since 1908, and was "thoroughly acquainted with his physical history since that time"; that soon after Dr. Parker reported for duty he had a severe attack of influenza and was quite ill; that from that time he watched his case; that he had repeatedly prescribed for him and had taken him to various places and hospitals for consultation and advice, and that "I can truthfully say that he has never been well since his original attack in 1918"; that during this time there had been intervals when he was able to do part-time work, but since 1927 he had been completely disabled.

In addition to this, Dr. Bruce testified that from 1919 to 1925 he treated Dr. Parker, at intervals of four or five weeks, for attacks of illness which Dr. Bruce diagnosed as influenza accompanied by diarrhea; that the same disease which eventually became, and which he pronounced, disabling in 1927, was an aggravation and continuation of the same thing—presented the same symptoms with considerable aggravation.

Most significant is the testimony of Dr. Frank Lander. Dr. Lander was a very close friend of Dr. Parker, and had been on intimate terms with him for a long time before Dr. Parker entered the Army in 1918. Dr. Lander had given to Dr. Parker the statement above referred to, which had been used by Dr. Parker in his claim against the government. When Dr. Lander was under direct examination, his attention was called to the statement in his letter to the effect that Dr. Parker had never been well since his original attack of influenza in 1918. In explanation of this statement, Dr. Lander said: "I feel this way—this certificate is dated June 19, 1931. When Dr. Parker had the original attack of—I started to say influenza, whatever it was—in the Army—they called it influenza for the lack of a better name, but that terrible disease that invited death with bronchial pneumonia, he got over it after a long time but the insult to his body he never has gotten over and never will, but there was that time between when he was able to work but he never will be well. That is my opinion as to this case looking back from 1931. * * *" Again he said: "Hind sight is better than foresight sometimes. Remember this letter was dated in 1931 after the completion of the diagnosis. Now, looking back on the whole case I insist he had really never gotten well." Under cross-examination he testified that the statement was made in Dr. Parker's interest, that it was prepared at the request of Dr. Parker, who asked him to give the history of his case and to have it typewritten so that it could be read, and that the statement so prepared was turned over to Dr. Parker. He then reaffirmed the statement in his letter that he could "truly say that Dr. Parker has never been well since his original attack in 1918."

It is true that Dr. Alva S. Pack, who examined Dr. Parker for the insurance, testified that he considered Dr. Parker in good physical and mental condition in 1925. But it is also true that Dr. Pack did not know of the treatment which Dr. Parker had been receiving from Dr. Bruce from

1919 to 1925, and Dr. Pack knew nothing of Dr. Parker's medical history, except as stated in the application. While Dr. Bruce testified that he passed Dr. Parker for life insurance in other companies in 1925 and 1926, when asked whether or not he would have passed him for disability insurance, he declined to answer the question. It was he who, in his certificate of September 27, 1930, stated that since Dr. Parker's discharge from the Army he (Dr. Bruce), had been his physician and "had treated him at intervals of two or three months for recurring influenza. From these attacks he suffers from a severe cough, with elevation of temperature, accompanied always by diarrhea"; and in the certificate of March 12, 1932, certified that since Dr. Parker's discharge in 1918, "at intervals of a few days, he has suffered from chronic diarrhea, accompanied by nausea, vomiting and abdominal pains; that he has had during this period a chronic bronchitis."

Now the certificates containing these statements were signed by Dr. Bruce and turned over to Dr. Parker, and by him used as evidence in support of his claim against the United States for disability which (as he claimed), began in 1918 and had continued ever since.

In view of the fact that Dr. Parker himself, in four sworn statements to the government, claim that his disability commenced while he was in the Army in 1918, that he offered in support of this claim the statements and certificates of his many medical friends to the effect that he had never been well since he left the Army, and that his closest friend and medical adviser stated that it was his unequivocal opinion that Dr. Parker's present disability had its origin from the disease he contracted while in the Army in 1918, we think that it must be said that the plaintiff's disability resulted wholly or partly, directly or indirectly, from sickness contracted while he was engaged in military service in time of war. Since that is a risk expressly excluded from cover-

age by the terms of the policy, a verdict should have been directed for the defendant on this ground, and we so hold. ·

Certain it is that, had the facts set forth in the statements been disclosed, the disability insurance would never have been issued, for Mr. Gary Groton, the officer of the defendant company, whose business it was to pass upon applications and medical examiners' reports, swore, had these facts been disclosed to the company, the insurance would never have been issued.

The application being for disability insurance, the good health of the insured (Dr. Parker) was a matter of vital importance.

In this connection we quote the following language from *Cooley v. Metropolitan Life Insurance Company*, 153 S. C., 280, at page 291, 150 S. E., 793, 797; "By the terms of the policy and application * * * the parties agreed that the truthfulness of the applicant's answer to the questions propounded should be the basis upon which the validity of the policy should stand—if true, the policy should be a valid contract; if untrue, the policy should have no force as a contract. The applicant assumed the whole risk of the consequences, if his answers turned out untrue. *The existence of disease in an applicant for life insurance* [or we add, disability insurance] *is the presence of the very peril the company insures against. It is like insuring a building already on fire. The question as to the health of the applicant is a preliminary one, to ascertain if he is an insurable subject."* (Italics mine.)

It is one thing to say that one has had an attack of influenza and pneumonia, from which there was complete recovery, 7 years before his application for insurance, and quite another thing to say that ever since the original attack there have been recurring attacks of the same disease. There is quite a difference between complete rcovery and a regular return at intervals of 4 or 5 weeks of the same disease. There is a vast difference between consultation with phy-

sicians 7 years before an application for insurance and regular consultations with and treatment by physicians at intervals of a few weeks for recurrent attacks of the same disease right up to the time of applying for the insurance.

We think this case comes strictly within the rule and principle laid down in the case of *Johnson v. New York Life Insurance Co.*, 165 S. C., 494, 164 S. E., 175, 176. In the *Johnson case* the insured stated that he had not been treated by, or had consultations with, physicians during the 5-year period prior to his application for insurance, whereas the evidence showed that he had on ten different occasions been treated for alcoholism. The Court said: "The facts clearly were of such nature that Johnson could not fail to know them when answering the questions in the application as to his consultation of physicians—certainly they were of such nature that he would be conclusively presumed to know them." On the strength of this conclusion, the Court decided in the *Johnson case* that the facts could reasonably give rise to only one inference; namely, that the policy was procured in fraud.

It is of paramount significance in this case that, at the time Dr. Parker made application for the insurance in question, he was a physician of extensive experience specializing in $x$-ray and stomach and intestinal troubles. Furthermore, the very disease from which he claims to be suffering comes within the class of work in which he specializes. He of course knew fully the purpose of a medical examination of an applicant for insurance. He knew, too, the importance of answering accurately and truthfully all questions contained in the medical examiner's report. It appears that his answers in the medical examiner's report were false and misleading in three important particulars. He did not state that he had had recurring attacks from 1918 to 1925 of the same disease, which eventually caused his disability. He falsely stated that he had completely recovered from an attack of influenza and pneumonia contracted in 1918. He

falsely stated that the only physicians with whom he had consulted or by whom he had been treated were the army physicians at Camp Wadsworth, in 1918, whereas he had been treated by several physicians and by his own family physician as often as every 4 or 5 weeks, ever since he left the Army.

It is inconceivable that Dr. Parker did not know that, if he told the insurance company that, in addition to having the severe attack of influenza and pneumonia while in the Army in 1918, where he was treated for 8 months by the Army physicians, that he had never gotten well, but that ever since he had been having recurring attacks of influenza accompanied by diarrhea, and that he had consulted several physicians and been treated by one as often as every 4 or 5 weeks the insurance would not have been issued to him. The only reasonable inference to be drawn, therefore, is that Dr. Parker deliberately withheld this information, with the fraudulent purpose of procuring the insurance.

The case at bar is easily distinguished from the case of *Rogers v. Insurance Co.,* 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172, in which the question was whether the insured knew that he had suffered from cancer. Rogers was a layman, and as was said in the *Johnson case, supra,* "one may well suffer from cancer without knowing it"; and it may be added that Rogers had never had a definite diagnosis of his condition made as cancer. This case is also clearly distinguishable from the later case of *Suggs v. New York Life Ins. Co.,* 174 S. C., 1, 176 S. E., 457. In the *Suggs case* the evidence showed that the insured, a man of good character, might not have known of the real condition of his health at the time he applied for the insurance. And, unlike Dr. Parker, Suggs was a layman and unskilled in medical matters. There is this important difference also in the two cases: Suggs died shortly after the insurance was issued. There was no subsequent word from him, after the insurance was procured, that tends to throw any light upon whether or not

he realized the state of his health at the time he applied for the insurance; while in Dr. Parker's case the Court has before it several of his sworn statements and statements adopted by him, made by physicians at his request, which negative completely any claim that the false statements were made in good faith.

There is a striking analogy also between this case and the case of *McLester v. Metropolitan Life Ins. Co.*, 175 S. C., 425, 179 S. E., 490, 493, recently decided by this Court in an unanimous opinion.

In the *McLester case* it appears that the insured had been advised by her physician that she had cancer and that in the application to the medical examiner she falsely stated that she was not suffering from any disease. In the instant case, as appears by what we have said above, Dr. Parker not only knew of his condition from the many consultations had with other physicians, but, being an experienced physician himself, was fully cognizant of the fact that he was suffering from a disease which in his own words made his work very intermittent and caused him many breakdowns, and from which he had been suffering ever since the original attack, which occurred while he was in the Army in 1918.

The conclusion is reached in the *McLester case* that "this is another of those 'rare cases' where there was no issue of fraud to be submitted to the jury, and where it became the duty of the trial court to direct a verdict for the defendant."

We think that the same conclusion must be reached in this case, and that the defendant's motion for a directed verdict should have been granted upon the ground of false representation and fraud in the procurement of the policies. It would follow that the policies of insurance were void, and we so hold.

It is therefore ordered that the judgment of the County Court be, and hereby is, reversed, and the case remanded, with instructions to enter up judgment for the defendant under Rule 27 of this Court.

Mr. Chief Justice Stabler and Messrs. Acting Associate Justices Bonham and Phillip H. Stoll concur.

Mr. Justice Carter (dissenting):

I am unable to agree with the conclusion reached in the leading opinion in this case, and therefore most respectfully dissent. I shall not undertake to quote the testimony, for it would serve no useful purpose, and therefore simply state that, in my opinion, the record required the trial Judge to submit all material issues to the jury, and that his Honor committed no error in doing so. As to the allegations of error imputed to the trial Judge in refusing to admit in evidence certain testimony, I think his Honor committed no prejudicial error, and I also think that his Honor committed no prejudicial error in the other respects charged. I therefore think the judgment of the lower Court should be affirmed.