737 S.E.2d 857

**SHENANDOAH LIFE INSURANCE COMPANY, Respondent,**

v.

**Lakeisha E. SMALLWOOD, Appellant.**

Appellate Case No. 2011–195270.

No. 5076.

Court of Appeals of South Carolina.

Heard Oct. 31, 2012.

Decided Jan. 23, 2013.

Rehearing Denied Feb. 13, 2013.

Eleanor Duffy Cleary, of Columbia, and D. Reece Williams, III, Callison Tighe & Robinson, LLC, of Columbia, for Appellant.

George Verner Hanna, IV, Howser Newman & Besley, LLC, of Columbia, for Respondent.

FEW, C.J.

Shenandoah Life Insurance Company brought this action to void an insurance policy it issued on the life of Lorenzo Smallwood. The circuit court granted partial summary judgment to Shenandoah, and thus narrowed the issue for trial to whether Lorenzo intended to defraud the insurance company

when he did not disclose information related to his medical history on the insurance application. At trial, the court granted Shenandoah's motion for a directed verdict. Lakeisha Smallwood appeals the directed verdict. We hold a jury could reasonably conclude that Shenandoah failed to meet its burden of proving Lorenzo made the misrepresentations with the requisite fraudulent intent. Therefore, the issue should have been decided by a jury. We reverse and remand for trial.

## I. Facts

Lorenzo Smallwood joined the U.S. Marine Corps following the 9/11 terrorist attacks and served tours of duty in both Afghanistan and Iraq. He was honorably discharged from the Marines in 2004. On October 2, 2006, Lorenzo visited the emergency department of William Jennings Bryan Dorn Veteran's Medical Center in Columbia. He complained to nurse Pamela O'Toole about not being able to sleep well in the two years since his return from his tours overseas and stated he believed he suffered from post-traumatic stress disorder (PTSD). O'Toole noted on her medical assessment, "[p]atient admits to drug and alcohol use." However, Lorenzo's exact statement concerning his drug use is unclear from the record, and by the time of trial, O'Toole had no independent recollection of treating Lorenzo. O'Toole referred him to an urgent-care doctor to discuss his psychological symptoms and also referred him for a psychological evaluation to be performed at a later date.

Later in the afternoon, Lorenzo saw Nirav Pathak, M.D., who recorded in his notes Lorenzo "cannot sleep well," "feels depressed," and "thinks that he suffers from PTSD since he came home 2 years ago from Iraq/Afghanistan." Dr. Pathak also noted, "alcoholic, 12 pack beer every day." In his assessment, Dr. Pathak wrote,

Substance Abuse (Alcohol)—current;

Cocaine Abuse—current.

When Dr. Pathak later testified, he explained that this assessment of Lorenzo "was based upon what [he] had talked to [Lorenzo] about." Though neither Dr. Pathak's notes nor his testimony reveal exactly what Lorenzo told him, Dr. Pathak testified that his notes showed Lorenzo expressed his

understanding of the assessment. However, Dr. Pathak could not confirm, nor is it clear from the record, that Lorenzo agreed because, by the time of trial, Dr. Pathak also had no independent recollection of treating Lorenzo. Dr. Pathak referred Lorenzo for a mental health consultation, which was scheduled for November 24, 2006, but Lorenzo did not show up for the appointment.

A year later, on November 19, 2007, Lakeisha Smallwood sought an insurance policy through Shenandoah on the life of her husband Lorenzo. She initially consulted Lorenzo's aunt, Gayle Smallwood, who sold insurance for Shenandoah. Gayle asked her colleague, Laura Haynes, an independent insurance agent representing Shenandoah, to write the policy. Haynes met Lorenzo and Lakeisha at their home to fill out the insurance application. While seated at the kitchen table, Haynes asked Lorenzo the application questions and recorded his answers on the application. Lakeisha and Gayle were present at the home when the application was being filled out but were primarily in another room with Lorenzo's and Lakeisha's children. Haynes testified she told Lorenzo to answer the application questions truthfully, and that both Lorenzo and Lakeisha had an opportunity to review the application before they signed it. The application contained a number of questions regarding Lorenzo's medical history, particularly,

> Within the last 10 years, have any persons proposed for coverage been diagnosed or treated by a member of the medical profession for ... mental or nervous disorder, alcohol or drug dependency?
>
> Within the past 5 years, have any persons proposed for coverage ... [u]sed cocaine?

Lorenzo answered "No" to each of these questions. Shenandoah issued the policy.

On September 18, 2008, Lorenzo was shot to death. The shooter was found guilty of voluntary manslaughter and sentenced to eighteen years. Shenandoah denied Lakeisha's claim on the policy on the ground that Lorenzo provided false statements on the application regarding his medical history.

## II. Procedural History

■ Shenandoah brought an action against Lakeisha to void the life insurance policy. To void a life insurance policy for

misrepresentation on the application, an insurer must prove five elements by clear and convincing evidence: (1) the applicant made a false statement on the application; (2) the applicant knew the statement was false; (3) the applicant's misrepresentation was material to the risk undertaken by the insurance company; (4) the insurer issued the policy in reliance on the misrepresentation; and (5) the applicant made the misrepresentation with the intent to defraud the insurance company. *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 364, 563 S.E.2d 331, 334 (2002).

Shenandoah filed a motion for summary judgment, which was partially granted when the Honorable George C. James, Jr. ruled the first four elements were established as a matter of law. As to the fifth element, Judge James wrote:

> While there is certainly a circumstantial inference that [Lorenzo] made the misrepresentations with the intent to defraud the plaintiff, the evidence presented to the court is also susceptible of the inference (at least at this stage) that he made the misrepresentations to hide his alcohol and drug abuse and his mental health issues from his wife. A jury should decide this issue, especially in light of the plaintiff's heightened burden of proof.

The case was called to trial before the Honorable W. Jeffrey Young. Shenandoah tried the case on the basis that Lorenzo's answers to the questions regarding mental or nervous disorder, drug or alcohol dependency, and cocaine use were made with the intent to defraud Shenandoah.[1] The court granted Shenandoah's motion for a directed verdict after the close of all evidence. Lakeisha filed a motion to alter or amend the judgment, which the court denied, stating, "This is another of those 'rare cases in which the undisputed facts can reasonably give rise to only one inference, namely, that the policy was procured by fraud.'" (quoting *Johnson v. N.Y. Life Ins. Co.*, 165 S.C. 494, 501, 164 S.E. 175, 177 (1932)).

### III. Directed Verdict Standard

"When reviewing the trial court's ruling on a motion for a directed verdict ..., this Court must apply the same

---

1. Lorenzo made other false statements on the application. However, Shenandoah did not present evidence of those misrepresentations in its motion for summary judgment or at trial.

standard as the trial court...." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331, 732 S.E.2d 166, 171 (2012). Viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party, "[t]he trial court must deny a motion for a directed verdict . . . if the evidence yields more than one reasonable inference." 399 S.C. at 331–32, 732 S.E.2d at 171. On appeal from an order granting a motion for a directed verdict, therefore, the appellate court must determine whether it would have been reasonably possible for the jury to return a verdict for the party opposing the motion. *Erickson v. Jones St. Publishers, L.L.C.*, 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006). "If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury." *Id.* Ordinarily, an applicant's intent to defraud an insurance company is a question for the jury to decide. *Winburn v. Minn. Mut. Life Ins. Co.*, 261 S.C. 568, 578, 201 S.E.2d 372, 376 (1973); *Johnson,* 165 S.C. at 501, 164 S.E. at 177.

## IV. Directed Verdict Analysis

██ We begin our analysis of the facts by acknowledging that there is not much evidence in the record of Lorenzo's intent, as is to be expected in cases where the applicant is deceased. The intent with which misrepresentations are made on a life insurance application is usually shown by circumstantial evidence, since the direct evidence is "locked up in the heart and consciousness of the applicant." *Smiley v. Woodmen of the World Life Ins. Soc.,* 249 S.C. 461, 465, 154 S.E.2d 834, 836 (1967) (quoting *Johnson,* 165 S.C. at 500, 164 S.E. at 177). The lack of evidence of intent works against the party who bears the burden of proof.

Shenandoah presented evidence from which a jury could reasonably conclude, based on the clear and convincing evidence standard, that Lorenzo made the misrepresentations with the intent to defraud the insurance company. However, the question we must answer is whether there is evidence in this record from which a jury could reasonably reach the opposite conclusion—that Shenandoah failed to prove by clear and convincing evidence that Lorenzo intended to defraud the insurance company. We find there is.

There are several plausible explanations for Lorenzo's failure to disclose the requested information. For example, a jury could reasonably conclude he was attempting to hide this information from his wife, who did not know he had used drugs. Haynes testified that if Lorenzo had disclosed his drug use, Lakeisha would have seen that on the application when she signed it. His aunt Gayle's presence when the application was being completed and Gayle's friendship with Haynes could provide another reason Lorenzo wanted to hide the information. Gayle testified Lorenzo was extremely close to her—she was "like a second mother to him" and had no knowledge of his previous drug use. As to Shenandoah's claim that Lorenzo's failure to disclose his PTSD was fraudulent, in addition to the fact that Lakeisha did not know Lorenzo thought he had PTSD, there is no evidence Lorenzo was ever diagnosed with or treated for it—only Lorenzo's statement to O'Toole and Dr. Pathak that he suspected he suffered from it.

The facts of this case are significantly different from the facts of cases our courts have deemed "rare" enough to merit determination of fraudulent intent as a matter of law. In *Johnson*, for example, the insured had been treated for alcoholism on ten separate occasions, was at one point confined to a hospital, and was warned by his physician to discontinue the use of alcohol completely to avoid "ruin[ing] his health." 165 S.C. at 499, 164 S.E. at 176. However, when the insured filled out his application for insurance only fourteen months after his last treatment for alcoholism,[2] he denied any consumption of alcohol other than "[a]n occasional drink" and claimed he had neither drunk alcohol to excess nor seen a doctor in the five years leading up to his application. 165 S.C. at 498, 164 S.E. at 176. He also falsely answered "no" and "none" to questions that would have revealed his severe alcoholism, including "Have you ever consulted a physician or practitioner for any ailment or disease ...?" and "What physicians or practitioners ... have you consulted or been examined or treated by within the past five years?" *Id.* On these facts, our supreme court stated "this is one of those rare cases in which

---

2. *See* 165 S.C. at 504, 164 S.E. at 178 (Carter, J., dissenting) (stating the insured's last treatment for alcoholism was November 7, 1928, and he made the application for insurance January 8, 1930).

the undisputed facts can reasonably give rise to only one inference, namely, that the policy was procured by fraud." 165 S.C. at 501, 164 S.E. at 177.

In *Winburn,* the insured was diagnosed with angina and was hospitalized for nine days for "an infected right Bartholin's gland cyst, an upper respiratory infection, subacute bronchitis, and hypertensive arteriosclerotic heart disease, with coronary insufficiency" less than two years prior to filling out an application for life insurance. 261 S.C. at 572, 577, 201 S.E.2d at 373, 376. Although the application specifically asked whether the insured knew "of any impairment now existing in your health" or had "consulted a physician for any illness" within three years prior to filling out the application, the insured did not reveal this information on her application. 261 S.C. at 573, 201 S.E.2d at 374. Our supreme court affirmed the circuit court's order granting the insurance company's motion for a directed verdict, stating:

> We recognize that ordinarily, the question of fraud in a case of this kind is for the jury, but we feel that this is one of those rare cases where the only reasonable conclusion from the uncontradicted facts is that the insured intended to deceive and defraud the respondent when she deliberately suppressed the truth and gave false answers as to her health or physical condition and prior medical treatment, of which she had full knowledge.

261 S.C. at 578, 201 S.E.2d at 376.

In *Parker v. Pacific Mutual Life Insurance Company of California,* 179 S.C. 117, 183 S.E. 697 (1935), a disability insurance case, the insured stated he had previously suffered from influenza and pneumonia, but that he had completely recovered seven years prior to filling out the application. 179 S.C. at 119, 120, 183 S.E. at 697, 698. In reality, the insured experienced frequent and recurring attacks of both illnesses during that seven-year period and had consulted numerous physicians regarding his condition. 179 S.C. at 124–29, 183 S.E. at 700–02. The insured was a physician practicing in a specialty dealing with the illnesses he suffered from and, as the court stated, "he was certainly aware of their significance and materiality in connection with his application for insur-

ance." 179 S.C. at 122, 183 S.E. at 699. Based on these facts, the supreme court stated:

> It is inconceivable that Dr. Parker did not know that, if he told the insurance company [the truth], the insurance would not have been issued to him. The only reasonable inference to be drawn, therefore, is that Dr. Parker deliberately withheld this information, with the fraudulent purpose of procuring the insurance.

179 S.C. at 133, 183 S.E. at 703–04.

The nature of the facts concealed by the insured is a consistent theme in these "rare" cases. In *Johnson, Winburn*, and *Parker* for example, the facts concealed were indisputably known by the insured to relate directly to a significantly increased risk of death or, in *Parker*, disability. From the insureds' knowledge of this increased risk, the court found the existence of fraudulent intent in those cases as a matter of law. Additionally, in the cases the trial court cited in support of its directed verdict, the insured was diagnosed with a grave illness and applied for life insurance with the intent to defraud the insurance company as to that illness.[3] In these cases, the insured obviously knew at the time of the misrepresentation that he or she faced a substantially increased risk of death from the very condition he or she lied about on the insurance application.

---

3. *See, e.g., Nationwide Life Ins. Co. v. Attaway*, 254 F.2d 30, 32, 34 (4th Cir.1958) (fraud as a matter of law where insured received extensive treatment for symptoms typical of heart disease that he did not disclose); *Washington·v. Garden State Life Ins. Co.*, No. 3:06–2824–MBS, 2007 WL 2363827, at *1–2, 4 (D.S.C. Aug. 16, 2007) (insured renewed application for insurance six months after HIV diagnosis but stated he had not tested positive for HIV or consulted a doctor in last five years); *Reese v. Woodmen of the World Life Ins. Soc.*, 221 S.C. 193, 203, 69 S.E.2d 919, 923 (1952) (intent to defraud inferred as a matter of law because of applicant's recent and extended medical care for serious heart disease); *Robinson v. Pilgrim Health & Life Ins. Co.*, 216 S.C. 141, 145, 57 S.E.2d 60, 62 (1949) (fraud as a matter of law where insured stated he was generally in sound health and concealed a recent operation for tuberculosis); *Murray v. Metro. Life Ins. Co.*, 193 S.C. 368, 370–71, 8 S.E.2d 314, 315 (1940) (insured stated he had not been treated by a physician and had no health problems when he had been hospitalized for advance tuberculosis); *McLester v. Metro. Life Ins. Co.*, 175 S.C. 425, 428–29, 179 S.E. 490, 491–92 (1935) (fraud as a matter of law where insured was informed she had an incurable cancer, sought an insurance agent's office away from her town, and failed to disclose her cancer).

This case, on the other hand, is not one of those rare cases. Shenandoah presented no evidence that Lorenzo, at age twenty-six, associated his alcohol or cocaine use with any increased medical risk. The medical records from Lorenzo's visit to Dorn Medical Center reveal that he admitted "drug and alcohol use" to a nurse, and that a doctor assessed it as alcohol and cocaine "abuse." However, neither the nurse nor the doctor remembered at trial what Lorenzo said that led them to write what they wrote in the records. Viewed in the light most favorable to the non-moving party, Dr. Pathak's used the term "abuse" to refer to isolated cocaine and alcohol use. As to any mental disorder, the record contains nothing more than Lorenzo's suspicion he had PTSD. These facts support a reasonable inference that Lorenzo's failure to disclose the information was not fraudulent. *See Metro. Life Ins. Co. v. Bates*, 213 S.C. 269, 282, 280, 49 S.E.2d 201, 206 (1948) (supreme court reversed a directed verdict for insurance company, stating "[c]onscious fraud could not be inferred from mere inaccurate answers," and a "[r]easonable inference ... is ... that [the insured] considered [one consultation with a physician] of insufficient consequence to notify the company") (quotation marks omitted).

## V. Shenandoah's Other Arguments

■ Shenandoah makes two additional arguments that we reject. First, Shenandoah argues the fact that Lorenzo signed the application containing the misrepresentations is conclusive evidence he did so with fraudulent intent. We disagree. The simple fact that an answer on a signed application is false does not satisfy an insurer's burden of proving the applicant made the misrepresentation with the intent to defraud the company. *See Smiley*, 249 S.C. at 465, 154 S.E.2d at 836 (stating "the mere signing of the application containing the answers alleged to be false is not conclusive" of fraudulent intent (citation omitted)).

Second, Shenandoah argues there is no evidence in the record to support Lakeisha's position that Lorenzo concealed the information to hide it from his wife and aunt. This argument misapplies the burden of proof. *See Lanham*, 349 S.C. at 364, 563 S.E.2d at 334 ("[T]he burden of proof rests upon the insurer to show, by clear and convincing evidence,

... that [the statements] were made with intent to ... defraud the company."). In holding that a jury could reasonably conclude Shenandoah failed to meet its burden of proof, we do not rely on the existence of evidence presented by Lakeisha. Rather, we hold that the evidence Shenandoah presented is insufficient to support a conclusion that it proved Lorenzo's fraudulent intent clearly and convincingly as a matter of law. Our discussion of "several plausible explanations" is simply to illustrate that there is more than one inference a jury may reasonably draw from this evidence. This is particularly true in light of the clear and convincing standard of proof Shenandoah must meet. *See Duncan v. Ford Motor Co.*, 385 S.C. 119, 138, 682 S.E.2d 877, 886 (Ct.App.2009) ("Clear and convincing evidence is: that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established. The clear and convincing standard is the highest burden of proof known to civil law." (internal citations and quotation marks omitted)).

## VI. Conclusion

We do not condone Lorenzo's misrepresentations. We find, however, a jury could have reasonably concluded Shenandoah failed to prove Lorenzo made the misrepresentations with the intent to defraud the insurance company. Therefore, the trial court should not have directed a verdict in favor of Shenandoah.

**REVERSED AND REMANDED.**

PIEPER, J., concurs.

WILLIAMS, J., dissents.

WILLIAMS, J., dissenting:

I respectfully dissent and would affirm the order of the circuit court. I disagree with the majority's holding that a jury could reasonably conclude that Shenandoah failed to meet its burden of proving Lorenzo made the misrepresentation with the requisite fraudulent intent. The undisputed evidence indicates that Lorenzo reported alcohol and cocaine abuse to a

nurse and treating physician just one year prior to completing the insurance application at issue in the this case.

Further, I disagree with the majority's reliance on its finding that no evidence indicated that Lorenzo associated his alcohol or cocaine use with any increased medical risk. I believe the association of a prospective insured's drug and alcohol abuse to an increased medical risk is patently apparent. *See Sadel v. Berkshire Life Ins. Co. of Am.*, 473 Fed. Appx. 152, 156 (3d Cir.2012) (affirming the trial court's order granting the insurance company summary judgment on its rescission counterclaims because clear and convincing evidence indicated the insurer's application included fraudulent statements, namely denying past drug use and treatment for drug use); *Burkert v. Equitable Life Assur. Soc. of Am.*, 287 F.3d 293, 297–98 (3d Cir.2002) (noting that under Pennsylvania law, misrepresentations regarding alcohol abuse in a life insurance application are deemed to be made in bad faith as a matter of law and extending those holdings to drug abuse); *Life Ins. Co. of Ga. v. Helmuth*, 182 Ga.App. 750, 357 S.E.2d 107, 108–09 (1987) (reversing the trial court's denial of an insurance company's directed verdict motion based on undisputed evidence that the insured concealed information about her past treatment for drug and alcohol use). Moreover, evidence that Lorenzo failed to disclose his drug and alcohol use in order to conceal his conduct from his wife and aunt is purely speculative and, further, is irrelevant to the question of his intent to defraud Shenandoah. I believe that, as a matter of law, Lorenzo's knowing and willful concealment of his drug and alcohol abuse demonstrated an intent to defraud Shenandoah and, thus, the trial court did not err in granting Shenandoah's motion for a directed verdict.